**Tasanilla HOPSON, Appellant,**

v.

**Delores Palmer HOPSON, Appellee.**

**No. 11558.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 24, 1954.

Decided Jan. 20, 1955.

Stephens, Chief Judge, dissented in part, and Wilbur K. Miller, Circuit Judge, dissented

See also Stewart v. Stewart, 220 F. 2d 807.

Mr. Joseph D. DiLeo, Washington, D. C., for appellant.

Mr. John Geyer Tausig, Washington, D. C., for appellee.

In Banc.

Before STEPHENS, Chief Judge, and EDGERTON, CLARK,* WILBUR K. MILLER, PRETTYMAN, BAZELON, FAHY, WASHINGTON and DANAHER, Circuit Judges.

BAZELON, Circuit Judge, with whom EDGERTON, PRETTYMAN, FAHY, WASHINGTON and DANAHER, Circuit Judges, concur.

---

* Clark, Circuit Judge, died before the decision in this case.

1. Their marriage took place on the Island of Guam where he was stationed as a member of the armed forces and she as a civilian worker.

2. When Tasanilla first entered military service in 1942, he was domiciled in Kentucky. In June 1949, while still in the service, he moved to the District of Columbia for approximately six months. As of January 9, 1950, the day he was released from active duty, he claimed as home both Kentucky and Michigan where his mother lived. For the period from January 10 to June 25, 1950, he claims to have been domiciled in Florida. He filed and paid

Tasanilla Hopson deserted his wife, Delores, shortly after their marriage in 1948.[1] Their child was born the following year. Because she refused to divorce him, he instituted divorce proceedings against her in Florida in 1950, shortly after his discharge from the military service and while she was living in a Maryland suburb of Washington, D. C. Delores was neither personally served with process, nor did she appear or otherwise participate in the proceedings. She was aware of their pendency, however, and stated in a letter to Tasanilla's attorneys that " * * * I interpose no objection to a divorce—but since this is based on lies and gives my daughter no protection don't expect me to sign anything." On June 13, 1950, upon service by publication, he obtained a final decree of divorce which provided for payments of $10.00 a week for the support of the child but nothing for his wife. Twelve days later, he entered into another marriage in Kentucky, from which a child has since been born.

Delores brought the present suit for support and maintenance for herself and child on July 14, 1950. At a preliminary stage in the proceeding, Tasanilla sought dismissal of a motion for maintenance *pendente lite* on the ground that the parties lacked sufficient residence in or connection with the District of Columbia. The pertinent circumstances are set out in the margin below.[2] The court ruled against him; at

income taxes there, but during that period, and until March 1952, his car was registered in Michigan. He left Florida on June 13, and after stopping briefly in the District of Columbia, went to Indiana to be married. There, on June 23, 1950, under oath in a marriage license application, he gave his "present residence" as Murray, Kentucky, and his "new address" as 139 Joliet Street, Washington, D. C. Thereafter, in July 1950, approximately one week before the instant complaint was filed, he returned to the metropolitan area of Washington, and signed a year's lease on an apartment located in Maryland at the District of Columbia line. In August 1950, in applying for active duty with the Air Force, he gave his mail-

a later stage of the proceeding another branch of the court held this ruling tantamount to denial of a motion to dismiss on the ground of *forum non conveniens* and of binding effect as the law of the case.

Upon trial, the court viewed existence of the husband and wife status as essential to the right to claim maintenance under District of Columbia law.[3] According to this view, of course, Delores' claim for maintenance would be barred if the Constitution's full faith and credit clause required recognition of the divorce obtained in the *ex parte* Florida proceedings.[4] The court found, however that Tasanilla had no bona fide intent to establish a permanent Florida domicile, and that the Florida court was therefore without jurisdiction to enter the decree of divorce. Accordingly, it held the decree not entitled to full faith and credit and granted support and maintenance relief to Delores and the child.

Tasanilla brought this appeal urging, in substance, that the District Court erred in (1) failing to apply the doctrine of *forum non conveniens* to refuse jurisdiction, and (2) refusing to accord full faith and credit to the Florida decree.

(1) Application of the doctrine of *forum non conveniens* is entrusted to the discretion of the Distrct Court to be exercised upon equitable considerations, and its determination may not be disturbed on appeal except for a clear abuse of this discretion.[5] Although in the circumstances of this case, we think the District Court would have been warranted in refusing jurisdiction under the doctrine of *forum non conveniens,* we cannot say that its failure to do so is an abuse of discretion. Moreover, there are certain traditional equitable considerations which, in our view, impel a balance in favor of not disturbing its action. This suit was commenced in 1950. There is no showing that appellant suffered any prejudice in the trial by reason of the appellee's choice of forum.[6] So far as the record is concerned, at least, appellant has no permanent residence and it is reasonable to assume from his past itinerant history that, as a practical matter, it would be extremely difficult for the appellee to obtain service upon him in some other forum.[7] To refuse to exercise jurisdiction at this late date and "put her upon a merry-go-round of litigation in other jurisdictions, with no certainty that any of them could or would exercise

ing and permanent address as 4920 Deal Drive, S.E., Apt. 201, Washington 20, D. C. As of November 4, 1950, appellant was employed as a salesman in the District of Columbia. At the time of trial he gave his legal residence as 4920 Deal Drive, Oxon Hill, Maryland. His car was then registered in Virginia.

At the time complaint was filed in the present suit, Delores lived in Maryland, just across the District of Columbia line. About one week later, she moved into the District with her minor child. She continued to live and work in the District until January 1952 when her job was transferred to Tucson, Arizona.

3. The court apparently relied on our maintenance statute which provides that "Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, pendente lite and permanently, may decree that he shall pay her, periodically, such sums as

would be allowed to her as pendente lite or permanent alimony in case of divorce for the maintenance of herself and the minor children, if any, committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to the payment of permanent alimony." D.C.Code, § 16–415 (1951).

4. By an *ex parte* proceeding, we mean, of course, one in which there had been neither personal service of process nor voluntary appearance or participation by the spouse sued.

5. Simons v. Simons, 1951, 88 U.S.App.D.C. 180, 187 F.2d 364; Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329.

6. See Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055; Ford Motor Co. v. Ryan, supra, 182 F.2d at page 330.

7. See note 2, supra.

jurisdiction in her behalf" would, we think, be unduly harsh and unjust.[8]

(2) We granted a rehearing in banc in this case for the purpose of considering questions flowing from the Supreme Court's decisions in Estin v. Estin,[9] and May v. Anderson,[10] concerning the recognition to be accorded *ex parte* foreign divorce decrees under the Constitution's full faith and credit clause. This consideration necessarily required review of the recent decision upon the subject by a division of this court in Meredith v. Meredith.[11]

In Estin, the husband obtained an *ex parte* foreign divorce in Nevada after a New York court, wherein he appeared generally, had awarded his wife a decree for permanent alimony (the equivalent of permanent maintenance under the D.C.Code). Upon obtaining the Nevada decree, he stopped paying under the New York award. She thereupon sued for a supplemental judgment in New York for past due payments. The Supreme Court held that the New York award was a "property interest * * an intangible, jurisdiction over which cannot be exerted through control over a physical thing. Jurisdiction over an intangible can indeed only arise from control or power over the persons whose relationships are the source of the rights and obligations. * * * The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony." [12] The Court also expressed the view that to hold that the Nevada decree wiped out the New York award would amount to a holding that Nevada could "restrain respondent from asserting her claim under that judgment. That is an attempt to exercise an *in personam* jurisdiction over a person not before the court. That may not be done." [13] Thus, since Nevada never acquired jurisdiction to enter a decree affecting this personal right, the Court approved New York's enforcement of its prior judgment notwithstanding the Nevada divorce decree.

Later, in May v. Anderson which involved a *habeas corpus* proceeding in Ohio to determine immediate right to the custody of children, the Supreme Court extended this doctrine of divisibility of divorce by holding that Ohio was not bound to accord full faith and credit to an *ex parte* Wisconsin decree awarding custody to the ex-husband. "[W]e recognize," said the Court, "that a mother's right to custody of her children is a personal right entitled to at least as much protection as her right to alimony." [14] Mr. Justice Frankfurter pointed out, in a concurring opinion,

---

8. Melvin v. Melvin, 1942, 76 U.S.App.D.C. 56, 59, 129 F.2d 39, 42, concurring opinion of Associate Justice Rutledge.

9. 1948, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561.

10. 1953, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221.

11. 1953, 204 F.2d 64.

12. 334 U.S. at pages 548–549, 68 S.Ct. at page 1218. The Supreme Court here applied the doctrine of and cited Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, that the state of domicile of a debtor acquires no power to determine the personal rights of a creditor unless the latter has been personally served or appears in the proceeding. "We know of no source of power which would take the present case out of that category," said the Court.

13. Ibid.

14. 345 U.S. at page 534, 73 S.Ct. at page 843. At page 533, of 345 U. S., at page 843 of 73 S.Ct., Mr. Justice Burton wrote: " * * * we have before us the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her *in personam*."

And at page 536, of 345 U. S., at page 844 of 73 S.Ct., Mr. Justice Frankfurter observed: "There are, of course, adjudications other than those pertaining to children, as for instance decrees of alimony, which may not be definitive even in the decreeing State, let alone binding under the Full Faith and Credit Clause."

that he understood the Court's decision to be only that Ohio was not required by the full faith and credit clause to accept the Wisconsin custody decision but that it could, if it saw fit, treat the Wisconsin decree as binding without violating that clause.

We applied this doctrine of the divisibility of divorce in Meredith v. Meredith.[15] There, the husband sued for limited divorce in the District of Columbia, in August 1948. Alimony pendente lite was awarded with the husband's consent. An amended complaint for absolute divorce was filed by the husband in April 1950. This was later dismissed on his motion under Fed.Rules Civ.Proc. rule 41(a) (2), 28 U.S.C.A., the husband having moved to Texas. Simultaneously, however, the court permitted the wife to file a counterclaim for separate maintenance, which she did on September 1, 1950. On August 27, 1951, the husband obtained a final divorce decree in Texas without provision for alimony or maintenance. Although the husband requested her to appear in the Texas proceedings, she was not personally served with process nor did she voluntarily appear or participate therein. Upon trial of the wife's counterclaim in October 1951, the District Court held the *ex parte* Texas divorce entitled to full faith and credit and, accordingly, dismissed the counterclaim as moot. On the appeal we held, *inter alia*, that the full faith and credit clause did not require recognition of the Texas divorce to the extent of cutting off any right which the nonappearing wife may have had to maintenance under the District law; but that the question of recognition or nonrecognition "even as to the issue of maintenance" is left "squarely up to each individual [forum] to be solved there in conformity with its public policy and in the light of the many conflicting interests and considerations

so patently involved."[16] We adhere to this holding.

In the present case also, we think the full faith and credit clause does not operate as a bar to maintenance. We recognized in Meredith that the divisibility doctrine rested on the foreign court's lack of *in personam* jurisdiction over the non-appearing spouse and not upon the reduction of her maintenance right to judgment prior to the divorce. We said, "While the Estin decision involved merely the enforcement of a maintenance order entered prior to the foreign divorce, its reasoning would seem to be equally applicable to an original grant of maintenance after the divorce. Either may be done consistently with the full faith and credit clause." We find no basis in that reasoning for drawing a distinction, so far as full faith and credit are concerned, between an original grant of maintenance after the divorce in a suit filed prior to the divorce, as in Meredith, and such a grant in a suit filed after the divorce, as in the present case. Moreover, it seems to us that it would unduly exalt form over substance to draw any rigid distinction since the claim sued upon in Meredith and the one reduced to judgment in Estin flow from the same substantive rights as the one neither sued upon nor reduced to judgment in the present case. We therefore hold that a grant of maintenance in a suit filed after an *ex parte* foreign divorce is also consistent with the full faith and credit clause.

In Meredith, however, we ruled original awards of maintenance after an *ex parte* foreign divorce barred by the public policy of the District of Columbia. We held this policy, "based on principles of comity," required recognition of such divorces and that failure of "the wife to seek alimony in the jurisdiction granting the divorce * * * will bar her from thereafter availing herself of Sec-

15. 1953, 204 F.2d 64, 65. See Faye v. Faye, Sup.Ct.1954, 139 N.Y.S.2d 88; Armstrong v. Armstrong, 1954, 162 Ohio St. 406, 123 N.E.2d 267.

16. 204 F.2d at page 66.

tion 16–415 [the D. C. maintenance statute], just as failure to obtain alimony at the time a divorce is secured here has the effect of extinguishing a prior D. C. maintenance order." [17] On reconsideration we now conclude that we went too far in fixing this blanket rule, since circumstances may exist in particular cases, as we shall describe later, where allowance of maintenance after such divorce would serve, rather than contravene, local public policy.

■ In fixing a rigid rule, we took the position that § 16–415 of the D. C. Code expressed local public policy against the award of maintenance once a divorce decree has become effective. That section states: "Whenever any husband shall fail * * * to maintain his wife * * * the court, on application of the wife" may order him to pay as maintenance such sums as would be allowed "in case of divorce." We thought this position supported by our decision in Rapeer v. Colpoys,[18] wherein we expressed the view that once the parties are divorced, they are no longer "husband" and "wife" within the meaning of the maintenance statute. But we are now convinced, and so hold, that the court has general equity powers, which are not supplanted by the statute, and which are broad enough in appropriate circumstances to support a grant of maintenance after an *ex parte* divorce.

■ The statute is merely a specific authorization to enter a maintenance decree and is not a limitation on the court's general equitable powers to enter such a decree. In Tolman v. Tolman [19] the question concerned the trial court's jurisdiction to award alimony on a petition which did not allege sufficient grounds for divorce. The husband relied on an old Maryland statute, claiming that it defined the court's historical jurisdiction so as to exclude the power to award alimony unless grounds for a limited divorce existed. The court rejected this argument, reading the statute as an affirmative declaration, not as a negative limitation. Under its general equity power, the court held that it could award alimony even though grounds for divorce were not alleged.

"But the great and important question is at once suggested, why should not the jurisdiction exist to remedy great social wrongs, and to do justice to parties who are otherwise without adequate means of relief? Courts are instituted to redress wrongs and to furnish relief for the violation of the laws of society, and no wrong calls more imperatively for redress than that of a husband against his helpless wife, whom he has pledged himself to protect and defend." [20]

Rapeer recognized that general equity powers survived § 16–415: "We bear in mind Lesh v. Lesh, 21 App.D.C. 475, to the effect that Section 75 is not a limitation upon the power of the Supreme Court of the District of Columbia but a mere legislative recognition of a power which, apart from statute, exists in a tribunal having general equitable powers. And we do not say that Section 75 [now 16–415] operates as a limitation upon the power of the Supreme Court of the District of Columbia to issue a maintenance order against a divorced father for the support of his children." [21] Both before and after the passage of § 16–415, suits for maintenance in the District "have been re-

---

17. 204 F.2d at page 67.

18. 1936, 66 App.D.C. 216, 85 F.2d 715. That case, however, may be distinguished on the ground that there the wife appeared in the foreign divorce proceedings.

19. 1893, 1 App.D.C. 299.

20. Id. 1 App.D.C. at page 308. To the same effect, see Lesh v. Lesh, 1903, 21 App.D.C. 475, where the court found a general equitable power to award alimony pendente lite in maintenance actions although the Code, which provided for it in divorce actions, did not specifically provide for it in maintenance actions.

21. 66 App.D.C. at page 219, 85 F.2d at page 718.

garded * * * as equitable rather than legal." [22]

■ Equitable considerations, therefore, inevitably are factors to be weighed by the court when its aid is sought in the enforcement of a wife's personal marital rights, antedating a divorce. That such rights may not be extinguished by a foreign *ex parte* divorce decree is clear from Estin v. Estin, supra, and May v. Anderson, supra, as we have already noted. In Rice v. Rice, Mr. Justice Jackson dissenting, succinctly summarized the results attributable to recent decisions when he wrote:

> " * * * However, in addition to the rights grouped under the term *consortium*, which are terminated by divorce, there are subsidiary rights of a property nature such as support, alimony, distributive interests in personalty, dower and inheritance. These presented difficulties in case of the divorce on constructive service of process on a nonresident dependent in which there was no real chance to defend. So the Court improvised the concept of 'divisible' divorce, Estin v. Estin, 334 U.S. 541, 549, 68 S.Ct. 1213 [92 L.Ed. 1561], a divorce good to end a marriage but invalid to affect dependent property rights." [23]

The Court in its opinion in Rice v. Rice made clear that no personal service was made upon respondent, nor did she in any way participate in the Nevada proceedings.

Earlier, in Schneider v. Schneider, we had before us the question of the effect of a Nevada divorce decree upon the obligation of a father to support his son where both were domiciled in the District of Columbia. We pointed out that the father's voluntary appearance in the Nevada court "did not give that court jurisdiction to determine his obligation for support because neither the father nor the son had a Nevada domicile." We recognized, as a matter of public policy, that by the law of the District of Columbia the father was bound to provide adequate support for his son and held that the obligation "still exists in spite of the Nevada decree." We made it explicit that "It is, therefore, the duty of the court in the District of Columbia to compel the father to provide adequate support *under its general equity powers.*" [24]

There is no mystery beclouding the teaching of the Supreme Court in the cases mentioned or our application of it in repeated instances. Since 1877 the rule laid down by the Supreme Court has been as stated in Pennoyer v. Neff:

> " * * * But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam*, constructive service in this form upon a non-resident is ineffectual for any purpose. Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability." [25]

22. Franklin v. Franklin, 1948, 83 U.S. App.D.C. 385, 386, 171 F.2d 12, 13. In Bates v. Bates, 1944, 79 U.S.App.D.C. 14, 15, 141 F.2d 723, 724, this court pointed out that although the District Code does not authorize awards of maintenance and suit money pendente lite, such awards are within the District Court's discretion under its general equity powers. To the same effect see Howard v. Howard, 1940, 72 App.D.C. 145, 146, 112 F.2d 44, 45.

23. 1949, 336 U.S. 674, 679, 69 S.Ct. 751, 754, 93 L.Ed. 957.

24. 1944, 78 U.S.App.D.C. 383, 384–385, 141 F.2d 542, 543, 544, emphasis supplied.

25. 95 U.S. 714, 727, 24 L.Ed. 565.

It is certain, then, that there are personal rights of a wife acquired through marriage which may survive an *ex parte* foreign decree. We hold it to be consistent with the public policy of the District of Columbia to include maintenance among them. Nevertheless, a suit by her to enforce such rights is open to the usual equitable defenses. Exercise of the court's power to grant maintenance after an *ex parte* foreign divorce might, in many situations, encounter such defenses; for example, where there has been collusion, concealment of the wife's own misconduct during coverture, laches or, generally, inequitable conduct such as might be involved in a case of blackmail. In other circumstances, aid of the court in the assertion of a wife's surviving right to maintenance might well serve local public policy. Equitable considerations will govern, and solution of the question will lie in the exercise of a discretion guided by the circumstances of the particular case such as courts of equity have traditionally been called upon to exercise in the field of family relations. Clearly, an uncompromising rule which either allowed or denied maintenance claims after an *ex parte* foreign divorce without regard to the facts of the particular case, would result in inequities and hardships inconsistent with sound public policy.[26]

We therefore modify the rule announced in Meredith by recognizing that, guided by the sort of equitable considerations we have described, District of Columbia courts, consistently with local policy, may allow maintenance after an *ex parte* foreign divorce under their general equity power. It follows that there may be no necessity for a frontal attack upon the validity of the foreign *ex parte* divorce, though the circumstances surrounding its procurement may always be viewed as material equitable considerations. There are two important reasons why courts should seek to avoid such an attack. First, because of the deference due to the proceedings of a sister state;[27] and second, the result of the attack might well be to stigmatize unnecessarily a subsequent marriage and the children born thereof. Since the question of maintenance does not depend in each case upon the invalidity of the foreign divorce, sound judicial practice ordinarily will avoid a frontal attack upon such decree.

Accordingly, the preferable procedure in the circumstances of the present case calls for its remand to the District Court for redecision under the principles set forth in this opinion. If the facts of the case permit the separate maintenance action to be entertained and decided without the court's reaching the question of the validity of the *ex parte* foreign decree, the District Court should follow that course. If in fact and in law the foreign decree is invalid, the District Court is free so to decide, but only if it must.

Reversed and remanded for reconsideration and redecision under the principles set forth in this opinion.

STEPHENS, Chief Judge, (concurring in the result in part, dissenting in part).

For the reasons set forth below, I concur in the result reached by this court in its affirmance of the acceptance of jurisdiction by the District Court. Otherwise, I dissent from the decision of the court.

---

26. Cf. Gullet v. Gullet, 1945, 80 U.S.App. D.C. 73, 149 F.2d 17, and Gullet v. Gullet, 1949, 85 U.S.App.D.C. 12, 174 F.2d 531, in the second of which cases the trial court found the foreign divorce invalid. And see Hobbs v. Hobbs, 1952, 91 U.S.App.D.C. 68, 197 F.2d 412; and Huggs v. Huggs, 1952, 90 U.S.App.D.C. 237, 195 F.2d 771, where the doctrine of divisibility in connection with the right to maintenance was neither considered nor discussed.

27. In Rescue Army v. Municipal Court, 331 U.S. 549, 569, 67 S.Ct. 1409, 91 L. Ed. 1666 (1947), the Supreme Court said that it has followed a policy of "strict necessity" in disposing of constitutional issues.

This appeal involves a maintenance action in the District Court by the appellee, Mrs. Hopson, against the appellant, her husband, for support monies for herself, and for Dewane Hopson, a minor child of the parties. The suit also involved the custody of Dewane Hopson, which was awarded by the District Court to Mrs. Hopson. The appeal, however, presents no question concerning the custody provision of the judgment which is the subject of the appeal.

Mrs. Hopson's action was brought under D.C.Code § 16–415 (1951), providing:

Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, pendente lite and permanently, may decree that he shall pay her, periodically, such sums as would be allowed to her as pendente lite or permanent alimony in case of divorce for the maintenance of herself and the minor children, if any, committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to the payment of permanent alimony.

At the time of filing her complaint, Mrs. Hopson was not domiciled in the District of Columbia and Mr. Hopson was not. Mrs. Hopson, however, secured personal service of process upon her husband in the District, and shortly after the filing of her complaint she commenced living there and continued to do so for more than a year. Mr. Hopson contested the jurisdiction of the District Court but that court, apparently upon the faith of Melvin v. Melvin, 76 U.S App.D.C. 56, 129 F.2d 39 (D.C. Cir., 1942), overruled his contention.[1]

Mrs. Hopson's complaint charged failure by Mr. Hopson to contribute to the support either of her or of the minor child Dewane, and charged also desertion. Mr. Hopson's answer denied the desertion charge, admitted that he had contributed no monies toward the support of Mrs. Hopson but asserted that he had contributed to the support of Dewane. The answer justified his nonsupport of Mrs. Hopson, and thus contested the maintenance action so far as she is concerned, by pleading a decree of divorce in his own favor obtained in Florida prior to the filing of Mrs. Hopson's complaint; the answer asserted that after the Florida decree she was no longer his wife and that he was therefore not obligated to support her. No such "equitable defenses" as are referred to (as hereinafter explained) in the present opinion of this court were pleaded in the answer. It is without dispute that service of process upon Mrs. Hopson in the Florida proceeding was constructive, and that she was at no time a resident of or present in Florida.

After a trial the District Court found that at the time Mr. Hopson went to Florida in 1950 and at the time he commenced the divorce proceeding there, on the 26th of April, 1950, he had no intention of establishing a permanent domicile in the state and that on June 13th of the same year, the date on which he obtained the Florida divorce decree, he departed from Florida and did not thereafter return. The District Court therefore concluded that the Florida court did not have jurisdiction to grant the decree of divorce and that the same is invalid in the District of Columbia and that Mrs. Hopson continues to be the lawful wife of Mr. Hopson, and that he has a legal obligation to maintain and

1. In Melvin v. Melvin, this court, in its opinion, quoting from Curley v. Curley, 74 App.D.C. 163, 165, 120 F.2d 730, 732 (D.C.Cir.1941), said:

"* * * [T]he public policy of the District of Columbia does not require its courts to take jurisdiction of a matrimonial dispute between two persons who are neither domiciled in the District nor even residents thereof; especially where there is no showing that the welfare of children, rights of property, or other public interests, in the District are in any way affected."

But after that, the court added:

". . . [T]he District Court's *undoubted jurisdiction . . . of maintenance suits between nonresidents domiciled elsewhere* should not be exercised unless unusual circumstances justify trial here. . . ." [76 U.S.App. D.C. at 57, 129 F.2d at 40] [Emphasis supplied]

support her as well as their minor child. The court entered judgment requiring Mr. Hopson to maintain and support Mrs. Hopson and Dewane by the monthly payment of named sums. The court also found that Mr. Hopson had remarried after the entry of the Florida decree; and there is evidence in the record that a child was born of that marriage, although the court made no finding to that effect. The relevance of Mr. Hopson's marriage after the Florida decree and of the birth of a child will appear below in the discussion of the opinion of this court.

Mr. Hopson appealed to this court from the judgment of the District Court. The appeal was first heard before a division of three judges, but before a decision was rendered the court *sua sponte* ordered that the case be reheard *in banc*. On the rehearing Mr. Hopson made but two contentions: One, that the District Court erroneously accepted jurisdiction of the maintenance action; the other, that the court erroneously refused to accord full faith and credit to the Florida decree, since, according to Mr. Hopson, the evidence required a finding in his favor as to the Florida domicile. Mr. Hopson did not, on the appeal, otherwise contest the maintenance judgment.

This court rules that the acceptance of jurisdiction by the District Court was not erroneous. With that I agree, because of the ruling of this court in Melvin v. Melvin set forth in the margin above.

This court makes no ruling upon the subject of the right of the minor child, Dewane Hopson, to support by Mr. Hopson.

On the record in this case, this court could, without more, decide the appeal by affirming the judgment of the District Court in Mrs. Hopson's favor.

There is substantial evidence in the record to support the finding of that court that Mr. Hopson had acquired no domicile in Florida; and Fed.R.Civ.P. 52 provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The conclusions reached by the District Court that the Florida decree of divorce was invalid, and that Mrs. Hopson therefore continues to be the lawful wife of Mr. Hopson, and that he has a legal obligation to maintain and support her as well as the minor child, are therefore unassailable. On the present record, under D.C.Code § 16–415(1951), quoted above, Mrs. Hopson was entitled to the judgment entered in her favor by the District Court.

But this court does not so decide the case. What it does is to reverse the judgment and remand the case to the District Court "for redecision under the principles set forth" in its (this court's) opinion. The court decides further that: "If the facts of the case permit the separate maintenance action to be entertained and decided without the court's reaching the question of the validity of the *ex parte* foreign decree, the District Court should follow that course. If in fact and in law the foreign decree is invalid, the District Court is free so to decide, but only if it must." The court does not consider or determine at this time the correctness of the District Court's finding that there was no Florida domicile in Mr. Hopson and its conclusion that the Florida decree was therefore invalid. The court assigns as reasons for not doing so a desire on the part of the court to extend the "deference due to the proceedings of a sister state" [2] and a desire to avoid unnecessary stigmatization of "a subse-

---

2. In a footnote to the language above quoted this court, in its opinion, refers to Rescue Army v. Municipal Court, 331 U.S. 549, 569, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947), and to the statement of the Supreme Court therein that it has followed a policy of "strict necessity" in disposing of constitutional issues. While the opinion of this court does not specify what constitutional issue might be involved in the instant case, it presumably had in mind the constitu-

quent marriage and the children born thereof."

As I read the opinion of the court, it supports the remand order in the following manner: As a point of departure the court reviews and revises its decision in Meredith v. Meredith, 204 F.2d 64 (D.C.Cir.1953). An explicit statement of that case is necessary to an understanding of the revision: In that case, Mr. Meredith had filed a divorce action in the District Court and Mrs. Meredith had been granted leave to file a counterclaim for separate maintenance. Mr. Meredith later dismissed his suit, moved to Texas, and obtained there a divorce on valid Texas domicile, but on constructive service only as to Mrs. Meredith, she having entered no appearance in the Texas action. On the trial of Mrs. Meredith's counterclaim, which had remained pending, the District Court dismissed it as moot in view of the Texas decree, the court being of opinion that the foreign decree had destroyed the marital status of Mr. and Mrs. Meredith and that therefore Mrs. Meredith's claim to maintenance, based upon the existence of the marriage relationship, was no longer enforceable in view of the full faith and credit clause of the Constitution.[3] On appeal by Mrs. Meredith this Court of Appeals affirmed the District Court's dismissal of the maintenance claim, doing so upon the following grounds: The court, in view of Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948), discussed below, specifically rejected the District Court's view that the full faith and credit clause required denial of the maintenance claim. The court rejected, as having been undermined and repudiated by the Supreme Court

in Estin v. Estin, the premise in Gullet v. Gullet, 80 U.S.App.D.C. 73, 149 F.2d 17 (D.C.Cir.1945) (as that premise is phrased by this court in its opinion in the Meredith case), ". . . that a divorce a vinculo necessarily dissolves all of the incidents of matrimony, including the right of the wife to receive, and the duty of the husband to provide for, maintenance and support, and that these rights and duties therefore could not survive a dissolution of the marriage relationship." 204 F.2d at 65. This court said further, however, that whether or not a local maintenance action might prevail in the face of a foreign decree of divorce would depend upon the public policy of the locality, and that D.C.Code § 16–415(1951) in effect declared a local policy which requires a wife to seek alimony in the foreign forum, otherwise to be barred from availing herself of the Code provision. On that account, this court ruled, Mrs. Meredith could not prevail in her maintenance action. Mrs. Meredith filed a petition for rehearing *in banc* by this court. That petition was pending at the time the court *sua sponte* ordered a rehearing *in banc* in the instant case, remained pending during that rehearing, and is still pending and unacted upon. The relevance of this will appear below.

In the *instant case* this court, taking the Meredith decision, as said above, as a point of departure, rules *in respect of that decision* thus: The court accepts and affirms its ruling in the Meredith case that a grant of maintenance after a valid foreign *ex parte* divorce decree is a question of local policy and not a full faith and credit problem.[4] The court bases this acceptance and affirmation upon Estin v. Estin, and also upon May

---

tionally required amount of respect to be accorded to the domiciliary finding of a foreign court, in view of Williams v. North Carolina, 325 U.S. 226, 233, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945).

3. That this was the theory of the dismissal of Mrs. Meredith's counterclaim in the District Court is made apparent by the court's order of dismissal of November 28, 1951.

4. By the term "valid foreign *ex parte* divorce decree" as used in this dissenting opinion is meant a decree based upon a valid domicile of the plaintiff spouse but without any domiciliary foundation or appearance so far as the defendant spouse is concerned, and upon constructive service as to such spouse.

v. Anderson, 345 U.S. 528(1953), decided after the Meredith decision. The court concludes that the reach of Estin v. Estin includes a wife's unadjudicated maintenance claim; and the court supports the theory of survival of such a claim over a valid foreign divorce decree, saying that ". . . personal marital rights antedating a divorce . . . may not be extinguished by a foreign *ex parte* divorce decree". In making that statement the court expressly refers also to May v. Anderson. But the court "modifies" the decision in the Meredith case by rejecting the so-called "blanket" rule recognized therein, that in the District of Columbia the local policy has been declared by D.C. Code § 16–415(1951), and that that policy prevents the granting of maintenance after a valid foreign divorce decree if the wife has failed to seek alimony in the foreign forum. According to the court, there are, independent of the statute, "general equity powers" in the District Court to grant maintenance to a wife notwithstanding the limitations heretofore thought to be declared by the Code. Those powers, according to the court, are a logical extension of equity powers in a new age of "migratory divorces." The court cites, as supporting the existence of general equity powers in matrimonial causes, Tolman v. Tolman, 1 App.D.C. 299 (1893); Lesh v. Lesh, 21 App.D.C. 475 (1903); Rapeer v. Colpoys, 66 App.D.C. 216, 85 F.2d 715 (D.C.Cir.1936); Schneider v. Schneider, 78 U.S.App.D.C. 383, 141 F. 2d 542 (D.C.Cir.1944). But the court also recognizes that since a maintenance action is equitable there may be "the usual equitable defenses" which, if established, would prevent a wife's securing a maintenance decree. As examples, the court refers to "collusion, concealment of the wife's own misconduct during coverture, laches or, generally, inequitable conduct such as might be involved in a case of blackmail." According to the court, "Equitable considerations will govern, and solution of the question will lie in the exercise of a discretion guided by the circumstances of the particular case such as courts of equity have traditionally been called upon to exercise in the field of family relations."

It is upon the basis of the foregoing that this court, as stated above, reverses the judgment in the instant case and remands the case "for redecision" and tells the District Court that if the facts of the case permit the maintenance action to be entertained and decided without reaching the question of the validity of the foreign decree, the District Court should follow that course. But if in fact and law the foreign decree is invalid, the District Court is free so to decide, but only if it must. The court does not say what consequences shall attend a determination that the foreign decree is invalid.

For the following reasons I disagree with the disposition of the case made by the court:

## I

In my view the authorities cited by the court as supporting its decision do not do so. In Estin v. Estin, Mr. Estin obtained a foreign—Nevada—divorce upon constructive service and without any appearance in the Nevada proceeding by his wife, and the Nevada decree made no provision for alimony. But prior to the Nevada decree Mrs. Estin had secured in New York, where the parties had resided, and in a proceeding in which her husband had entered a general appearance, a separation decree awarding her permanent alimony. Upon obtaining the Nevada decree, Mr. Estin stopped making alimony payments. Mrs. Estin then sued in the Supreme Court of New York for the arrears and secured a judgment. 63 N.Y.S.2d 476; Id., 271 App.Div. 829, 66 N.Y.S.2d 421. The Court of Appeals of New York affirmed, 296 N.Y. 308, 73 N.E.2d 113, as did the Supreme Court of the United States on *certiorari*. 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561. The Supreme Court ruled that the Nevada decree could not impair Mrs. Estin's rights under the prior New York judgment be-

cause that judgment was a property interest created by New York in a proceeding in which both parties were present, and the Nevada court had no jurisdiction over this intangible in the absence of control or power over Mrs. Estin herself. The Court said:

> The New York judgment is a property interest of respondent, created by New York in a proceeding in which both parties were present. It imposed obligations on petitioner and granted rights to respondent. The property interest which it created was an intangible, jurisdiction over which cannot be exerted through control over a physical thing. Jurisdiction over an intangible can indeed only arise from control or power over the persons whose relationships are the source of the rights and obligations. Cf. Curry v. McCanless, 307 U.S. 357, 366 [59 S.Ct. 900, 83 L.Ed. 1339].
>
> Jurisdiction over a debtor is sufficient to give the State of his domicile some control over the debt which he owes. It can, for example, levy a tax on its transfer by will (Blackstone v. Miller, 188 U.S. 189 [23 S.Ct. 277, 47 L.Ed. 439]; State Tax Comm'n v. Aldrich, 316 U.S. 174, 176-177 [62 S.Ct. 1008, 86 L.Ed. 1358]), appropriate it through garnishment or attachment (Chicago, R.I. & P. R. Co. v. Sturm, 174 U.S. 710 [19 S.Ct. 797, 43 L.Ed. 1144]; see Harris v. Balk, 198 U.S. 215 [25 S.Ct. 625, 49 L.Ed. 1023]), collect it and administer it for the benefit of creditors. Clark v. Williard, 294 U.S. 211 [55 S.Ct. 356, 79 L.Ed. 865]; Fischer v. American United [Life] Ins. Co., 314 U.S. 549, 553 [62 S.Ct. 380, 86 L.Ed. 444]. But we are aware of no power which the State of domicile of the debtor has to determine the personal rights of the creditor in the intangible unless the creditor has been personally served or appears in the proceeding. The existence of any such power has been repeatedly denied. Pennoyer v. Neff, 95 U.S. 714 [24 L.Ed. 565]; Hart v. Sansom, 110 U.S. 151 [3 S.Ct. 586, 28 L.Ed. 101] New York Life Ins. Co. v. Dunlevy, 241 U.S. 518 [36 S.Ct. 613, 60 L.Ed. 1140].
>
> We know of no source of power which would take the present case out of that category. The Nevada decree that is said to wipe out respondent's claim for alimony under the New York judgment is nothing less than an attempt by Nevada to restrain respondent from asserting her claim under that judgment. That is an attempt to exercise an *in personam* jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York judgment, New York need not give full faith and credit to that phase of Nevada's judgment. A judgment of a court having no jurisdiction to render it is not entitled to the full faith and credit which the Constitution and statute of the United States demand. Hansberry v. Lee, 311 U.S. 32, 40-41 [61 S. Ct. 115, 85 L.Ed. 22]; Williams v. North Carolina, 325 U.S. 226, 229 [65 S.Ct. 1092, 89 L. Ed. 1577], and cases cited.
>
> The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern. [334 U.S. at 548–549, 68 S.Ct. at 1218]

As I read it this decision of the Supreme Court is no authority, and no language in the decision can properly be treated as authority, for an application of the so-called "divisibility" of divorce to a wife's claim for maintenance *which had not ripened into an adjudication in her favor prior to the entry of the foreign decree of divorce* in favor of the husband. No such claim for maintenance was involved in the Estin case and the decision can therefore have, in respect of such a claim, no force as a precedent. Whether the Supreme Court will in the future go so far as to rule that an unadjudicated maintenance claim survives a valid foreign decree of divorce is an open question. In Williams v. North Carolina, 317 U.S. 287, 63 S. Ct. 207, 87 L.Ed. 279 (1942), the Court ruled that the marital status is so far destroyed by a foreign decree, *ex parte* as to the wife but on valid domicile in the husband, that the husband may remarry with impunity so far as the laws against bigamy are concerned. The decision thus in effect recognizes that after such a decree the rights of the wife to conjugal association and conjugal fidelity no longer exist. It is true, as stated above, that in the original decision in Meredith v. Meredith this court ruled that the premise of Gullet v. Gullet that a valid foreign divorce dissolves all of the incidents of matrimony, including the right of the wife to receive and the duty of the husband to provide maintenance and support, was repudiated by the Supreme Court in Estin v. Estin. But since Meredith v. Meredith is now re-examined and modified by this court it seems proper, notwithstanding that that case is not before the court sitting *in banc* in the instant case, for me to say that, in my view, that case was, and is, no more governed by Estin v. Estin than is the instant case—because neither in Meredith v. Meredith nor in the in-

stant case was the wife's maintenance claim adjudicated prior to the entry of the foreign decree.

The decision in May v. Anderson also in my view lends no support to the decision of this court. The ruling in the May case is that the right of a mother to the care, custody, management and companionship of her minor children is not cut off by a foreign divorce and custody decree, the mother not having been in the foreign forum at the time of the proceeding there and not having entered an appearance therein. But such right of a mother arises out of the natural relationship of parent and child, which is not destroyed by a divorce or custody decree but only by death.

Tolman v. Tolman, Lesh v. Lesh, Rapeer v. Colpoys, and Schneider v. Schneider, relied upon by the court in the instant case as establishing general equity powers in the District Court in matrimonial causes, seem to me to be irrelevant: Tolman v. Tolman involved a claim for maintenance by a non-resident wife suing her husband, who resided in the District. No divorce, either domestic or foreign, had occurred and none was sought by either party. The only question in the case was whether or not the then-called Supreme Court of the District of Columbia, exercising "equity powers and jurisdiction", had authority to grant alimony grounded upon causes other than those upon which judicial separation or divorce *a mensa et thoro* could be decreed by the Ecclesiastical Court of England at the time of the Declaration of Independence. The court ruled that the Supreme Court of the District did have such powers. The case involved no question as to the survival of a maintenance claim over a foreign decree of divorce.

In Lesh v. Lesh, in a suit for maintenance instituted in the Supreme Court of the District, an order for the payment of temporary alimony and counsel fees was entered. The question was raised as to whether or not the court named had power to make an allowance of temporary alimony. The Court of Appeals ruled, upon the faith of Tolman v. Tolman, that under the general equity powers of the Supreme Court of the District it could grant alimony *pendente lite* and counsel fees in a maintenance action, and that its power to do so was not dependent upon any special statute. The case involved no attempt to enforce a wife's maintenance claim after a foreign divorce decree.

In Rapeer v. Colpoys the court ruled merely that D.C.Code § 18–102 (1929) (which, after describing the manner in which the Supreme Court of the District may enforce a decree in equity, provides: "But where the decree only directs the payment of money no defendant shall be imprisoned except in those cases especially provided for") is a limitation upon the power of the Supreme Court in respect of the manner of enforcing its orders, and that that statute permits enforcement by imprisonment for contempt of "decrees only directing the payment of money" only in cases especially provided for. And the court ruled that an order against a divorced father for the maintenance of his children is not such a "case" since it is not within the terms of D.C.Code § 14–75 (1929) (which parallels D.C.Code § 16–415 (1951) except that the latter refers to "pendente lite" alimony as well as to permanent alimony), which refers only to a husband. The case involved no question of the survival over a foreign decree of divorce of a wife's maintenance claim for herself. Only the support of minor children was involved. As said above, divorce does not destroy the relationship of parent and child and its attendant duty of support.

In Schneider v. Schneider, the court ruled that a collusive Nevada divorce obtained by Mrs. Schneider against her husband, who also entered an appearance in the Nevada court but had no domicile in Nevada, did not impair the right of a minor child of the parties, who was not before the Nevada court, to support by Mr. Schneider. The court held that it was the duty of the District Court, exercising its "general equity powers" to

compel the father to provide such support. The case involved no claim for maintenance of Mrs. Schneider herself. She sought maintenance only for the child.

## II

Not only, in my view, do the cases cited by the court as supporting its decision not do so, but also I think the decision of the court is contrary to the ruling of this court in Thompson v. Thompson, 35 App.D.C. 14 (1910), affirmed, 226 U.S. 551, 33 S.Ct. 129, 57 L.Ed. 347 (1913); contrary to the premise of Hobbs v. Hobbs, 91 U.S.App.D.C. 68, 197 F.2d 412 (D.C.Cir.1952), Huggs v. Huggs, 90 U.S.App.D.C. 237, 195 F.2d 771 (D C.Cir.1952), and Gullet v. Gullet, 85 U.S.App.D.C. 12, 174 F.2d 531 (D.C. Cir.1949); and contrary to the theory of Williams v. North Carolina.

In Thompson v. Thompson, Mr. Thompson, who was domiciled in Virginia both before and after his marriage, secured a divorce *a mensa et thoro* in Virginia upon the ground of matrimonial misconduct by Mrs. Thompson. In the Virginia action service of process on Mrs. Thompson was constructive only. Prior to the Virginia decree, Mrs. Thompson had filed a maintenance claim in the District of Columbia against Mr. Thompson, and after the Virginia decree she secured service of process upon him in the District and pressed the claim to judgment in her favor. On appeal by Mr. Thompson this court reversed, ruling that the matrimonial domicile was in Virginia, that the Virginia decree was entitled to full faith and credit, and that the matrimonial status having been destroyed by the Virginia decree, Mrs. Thompson's right to maintenance could no longer be enforced. This ruling was affirmed in the Supreme Court on *certiorari*. The case therefore stands for the proposition that an unadjudicated maintenance claim does not survive a valid foreign divorce. In Estin v. Estin

the Supreme Court distinguished the Thompson case upon the grounds that " . . . the wife by her conduct forfeited her right to alimony under the laws of the State of the matrimonial domicile where her husband obtained the divorce, and hence could not retain a judgment for maintenance subsequently obtained in another jurisdiction." [5] But matrimonial misconduct on the part of the wife as a ground of divorce was a fact which went only to the merits of the Virginia decision, not to the jurisdictional authority of the Virginia court to destroy the marital status. And the matrimonial domicile aspect of the decision of the Supreme Court in the Thompson case would seem now to be irrelevant since the Court (after Thompson v. Thompson) overruled, in Williams v. North Carolina, Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867 (1906), and in so doing ruled that matrimonial domicile in the foreign state is not necessary to the destruction of the marital status by the courts of that state, that only a valid personal domicile on the part of the plaintiff in the foreign state is requisite.

With respect to Hobbs v. Hobbs, Huggs v. Huggs and Gullet v. Gullet: Those cases did not actually involve a question of survival of a maintenance claim, whether adjudicated or unadjudicated, over a valid foreign *ex parte* decree; in each of them the foreign decree was found to be invalid. But the decision in each of those cases recognized the authority of the District Court to pass upon the question of the validity of a foreign decree of divorce in a local contest upon a maintenance claim; and in the Gullet case this Court of Appeals noted that that case had previously been remanded to the District Court in a manner requiring it to pass upon the question of the validity of a foreign divorce which had been pleaded but the validity of which had not been ruled upon at

---

5. The opinion in this Court of Appeals recited as a fact that the marriage of the parties took place in the District of Columbia. The opinion in the Supreme Court recited that the marriage was in Virginia. Both courts, however, agreed that the matrimonial domicile was in Virginia.

the first trial. The premise of those decisions is that a valid foreign decree destroys the foundation of an unadjudicated maintenance claim. It is to be noted that all three of these cases were decided after Estin v. Estin.[6]

The decision of this Court in the instant case is also contrary, in my view, to the theory stated above of Williams v. North Carolina, that the duty of the husband and the correlative right of the wife to conjugal association and fidelity do not survive a foreign decree of divorce.

III

The opinion and decision of the court appear to leave the District Court with insufficient direction. An invalid foreign *ex parte* divorce is of course no bar whatever to a wife's unadjudicated maintenance claim. That claim will succeed or fail upon its own merit, without reference to the invalid foreign divorce. In its opinion this court rules that not even a valid foreign *ex parte* divorce will bar a wife's unadjudicated maintenance claim. It necessarily follows that the validity or invalidity of a foreign divorce is a consideration wholly irrelevant to the disposition of a wife's claim for maintenance. Consistency would seem to require this court, in remanding the instant case for redecision, to limit the District Court to a determination of the question whether or not any of "the usual equitable defenses" stand in the way of Mrs. Hopson's prevailing on her maintenance claim; if no such defense is established then judgment should be entered in Mrs. Hopson's favor; if any such defense is established against her the judgment should be in Mr. Hopson's favor. Either such judgment, it would appear, would be the end of the proceeding below—if the validity of a foreign divorce (in this case the Florida divorce) is irrelevant to the disposition of a wife's maintenance claim. This result would appear to have been intended by the court in view of the statements in its opinion that a suit by a wife to enforce her surviving maintenance claim is open to "the usual equitable defenses," and that "equitable considerations will govern," and that "solution of the question" will lie in the exercise of a discretion, guided by the circumstances of the particular case, such as courts of equity have traditionally been called upon to exercise in the field of family relations.

But in the closing paragraph of its opinion the court says: "If in fact and in law the foreign decree is invalid, the District Court is free so to decide, but only if it must."

Thus the District Court appears to be told that if on consideration of the equities it finds them in Mrs. Hopson's favor a judgment for maintenance must be entered; *but if it finds them against her, it may still inquire into the question of the validity of the Florida divorce.* The conflict between this and the theory underlying the court's decision—that the validity or invalidity of the foreign divorce is a consideration irrelevant to the disposition of a wife's maintenance claim—appears to leave the District Court without sufficient direction as to its duty. Bearing in mind that inquiry into the validity of the Florida divorce may be made only if, on consideration of the equitable defenses alone they, or some

6. It should be noted that outside the District of Columbia the authorities are divided both before and after the decision of Estin v. Estin as to whether or not an unadjudicated claim for maintenance, alimony, or support survives a valid foreign decree of divorce. There is a comprehensive note on this subject in 28 A.L.R.2d 1378, et seq.

There is substantial authority to the effect that an unadjudicated maintenance claim does not survive. For example, see Peff v. Peff, 2 N.J. 513, 67 A.2d 161 (1949), opinion by the Supreme Court of New Jersey written for the court by Ackerson, J. and concurred in by all of the other members of the court, including Chief Justice Vanderbilt, but one (who did not participate); DeYoung v. DeYoung, 27 Cal.2d 521, 165 P.2d 457 (1946), opinion by the Supreme Court of California written for the court by Spence, J.

of them, shall have been determined against Mrs. Hopson, what—in the event that the court decides to exercise its thus defined freedom to examine into the question of the validity of the foreign divorce—is the court to do if it finds the divorce valid; and what is it to do if it finds it invalid? The opinion and decision of the court give no answer to these questions.

Speculating as to what the court's opinion and decision may mean: It would appear that if the Florida divorce is determined to be valid Mrs. Hopson is not to be allowed to prevail on her maintenance claim—because if any equitable defense shall be determined against her when considered without reference to the validity or invalidity of the Florida divorce, then *a fortiori* she should not prevail if the validity question shall also be determined adversely to her. But it would seem to follow from this that if the Florida divorce is determined to be invalid she will then be in a better position. Does this mean that she will then be allowed to prevail on her maintenance claim despite the fact that the equitable defenses should be determined against her when considered without reference to the question of validity of the Florida divorce decree? If so, it would appear that if on the remand of this case Mr. Hopson pleads and establishes that his wife has been guilty of collusion, concealment of misconduct during coverture, laches or blackmail a judgment for maintenance might nevertheless be entered in her favor. Such a result the court can hardly have intended. But if it is not intended, of what avail will be the reconsideration by the District Court of the question of the validity of the Florida divorce?

## IV

The opinion and decision of the court depart, in my view, from accepted judicial methods. It is elementary that if in the jurisdiction of a given court the principles of law appropriate for the decision of a case before the court are already known, whether through statutes or reported cases, it is the duty of the court to decide the case by the application of those principles. If, however, the case is novel, if there are no known principles of local statutory or case law appropriate for the solution of the question in the case at bar, the court will then have recourse to well reasoned decisions by reputable courts in other jurisdictions in similar cases and will usually follow them. If the court does not find the necessary propositions of law in other jurisdictions, or if it does but cannot approve them, or if it finds the foreign authorities divided, it will then attempt ". . . by choosing among competing decisions and competing analogies, to decide the case at bar in accordance with some general principle that harmonizes with the analogies of the law and with justice." It is thus that the law properly grows.[7] But the court in deciding the instant case follows none of the methods above described. It could have decided the case by applying the appropriate proposition of law recognized both locally and generally that if there is substantial evidence to support the findings of a trial court the court of appeals must uphold it, and the further appropriate proposition of law recognized both locally and generally that a foreign decree of divorce entered without establishment of domicile in the plaintiff is invalid for lack of jurisdiction in the court rendering it and by applying the local statute, D.C.Code § 16–415 (1951), which authorizes the District Court to compel a husband to maintain his wife and minor child. That would have resulted, as has been explained above in this dissenting opinion, in a decision affirming the judgment of the District Court in Mrs. Hopson's favor. But the court does not so decide the case. What the court does is this: The court announces a proposition of law for the solution of a dif-

7. See Wambaugh, Study of Cases §§ 73–75 (2d ed. 1894), of which the foregoing statement is a paraphrase and in which, in § 74, the language quoted appears.

ferent case, to wit, a case in which an unadjudicated maintenance claim is confronted by a *valid* foreign decree; the proposition of law is that such a claim survives such a decree. The court also announces a procedure to be followed in future maintenance cases involving foreign divorce decrees. The court then applies this newly announced rule of law and procedure to the solution of the instant case, which involves on the present record an *invalid* foreign decree of divorce, and reverses the judgment and remands the case for disposition under this new rule and new procedure. This method of decision is not only a departure from accepted judicial methods, and is on that account unwarranted, but also it is, for the reasons above stated, unnecessary.

The unwarranted character of the departure is accented by its effect upon the parties to the case. As to Mrs. Hopson: Instead of securing an affirmance now of the judgment of the District Court, Mrs. Hopson is compelled by the court to undergo a retrial and redecision of the case with consequent delay and expense. Moreover, in the retrial Mr. Hopson is to be permitted to raise equitable defenses against Mrs. Hopson, and, if he establishes any such defense, is to defeat her maintenance claim, unless the District Court exercises its discretion to re-examine the question of the validity of the Florida divorce and in so doing determines it invalid, in which event she may be dealt with more favorably (although just how is, as above explained, not made clear in the opinion and decision of the court). Also, it is to be noted, this authorization of Mr. Hopson to raise equitable defenses in the retrial of the case is notwithstanding the fact that when the instant case was originally before the District Court Mr. Hopson pleaded no such defenses against Mrs. Hopson's maintenance claim; and notwithstanding the fact that if, without pleading such defenses, he raised them in the course of the introduction of evidence, the District Court must have determined them against him—since it entered a judgment in Mrs. Hopson's favor. It may be commented further in this context that it is ironical that the decision of the court, apparently intended to enlarge maintenance rights in future cases involving valid foreign divorce decrees, operates to the disadvantage of the wife now before the court—whose right to maintenance on the present record and under the local maintenance statute is clear. To benefit future maintenance suit plaintiffs the court penalizes the wife now before the court.

As to Dewane Hopson: Since the judgment is to be reversed and the case remanded to the District Court for reconsideration and redecision, in view of equitable defenses which may be raised by Mr. Hopson, the entry of such final judgment—as distinguished from a *pendente lite* relief order—as may be proper for the benefit of Dewane will at least be postponed. And as to whether or not, if an equitable defense to the present action—in which Mrs. Hopson is the plaintiff—is established against her, any judgment may be entered in the present action in favor of Dewane the present opinion and decision of the court are silent. Must the action be dismissed *in toto;* is an equitable defense established against Mrs. Hopson to stand in the way, so far as the present action is concerned, of enforcement of Mr. Hopson's duty to support Dewane arising out of the relationship of parent and child? Is the effort of the court to avoid a decision by the District Court which might "stigmatize unnecessarily a subsequent marriage and the children born thereof"— *i. e.,* the effort of the court to protect the child born of the marriage of Mr. Hopson subsequent to the Florida divorce from an adjudication in the District Court which might reflect upon its legitimacy—to defeat, in the present action, the right of Dewane to support? Should not justice, like charity, commence at home? Should not this court recognize a prior obligation to protect the interest of Dewane Hopson who is

before it? These questions, as said, are left unanswered by the present opinion and decision.

## V

The opinion and decision of the court occasion preventable injustice to either Mrs. or Mr. Meredith. As is explained above, this court in its original decision of Meredith v. Meredith ruled that in view of Estin v. Estin an unadjudicated maintenance claim survives a valid foreign decree of divorce, *ex parte* as to the wife, but ruled also that D.C. Code § 16–415 (1951) declared a local policy which forbade recovery of maintenance by a wife notwithstanding that survival, if she had not entered an appearance in the foreign proceeding. As a result this court affirmed, although on different grounds, the result reached by the District Court, and its decision was therefore in Mr. Meredith's favor. As is also explained above, in the disposition of the instant case the court affirms and reiterates the first ruling in Meredith v. Meredith, but rejects the second and announces that a wife's local maintenance claim (which has survived a valid foreign divorce) may prevail in the District of Columbia notwithstanding D.C.Code § 16–415 (1951) provided the wife can satisfy the District Court that the equities are in her favor. This modification of the ruling in Meredith v. Meredith, of course, does not *ipso facto* alter unfavorably to Mr. Meredith the decision in that case. But Mrs. Meredith's petition for rehearing *in banc*, still pending before this court, must be ruled upon. If the court denies her petition Mrs. Meredith will have cause for feeling aggrieved since the modification of the original Meredith ruling is favorable to her; and if her petition for rehearing *in banc* had been granted, at the time the court *sua sponte* ordered a rehearing *in banc* in the instant case, or thereafter, and if the two cases had been consolidated for argument and disposition, Mrs. Meredith presumably would have had the benefit of this more favorable decision.

But if the court grants Mrs. Meredith's petition for rehearing *in banc* then Mr. Meredith will have cause to feel aggrieved. While in such rehearing he, as well as Mrs. Meredith, will have an opportunity to be heard by this court, that opportunity will be futile so far as Mr. Meredith is concerned since he will find himself confronted by the binding precedent of the decision in the instant case with its modification of the previous ruling in Meredith v. Meredith. The instant decision will have announced the modification unfavorable to Mr. Meredith without his having had an opportunity to be heard in respect of it. On the rehearing of the Meredith case this court will be obliged to apply its present ruling and will therefore remand the case for a retrial in the District Court under the modification of the Meredith ruling and under the new procedure outlined in the court's opinion. Thus Mr. Meredith will be required to undergo the expense of a retrial in the District Court, and this in the face of a state of law which may make it possible for Mrs. Meredith to prevail against him.

The injustice to Mrs. Meredith if her petition for rehearing is not granted, and to Mr. Meredith if it is granted, could have been prevented. I think justice required that at the time of the *sua sponte* order for rehearing *in banc* in the instant case, or thereafter, Mrs. Meredith's petition for rehearing *in banc* in the Meredith case should also have been granted and the two cases consolidated and heard together. In that event each of the parties to the two cases would have had an opportunity to be heard in this court in respect of the modification of its previous ruling in the Meredith case.

*In summary and conclusion:* In my view the decision of the court in the instant case is unwarranted for the following reasons: It is not supported by the authorities cited; it is contrary to existing authorities in this jurisdiction and to the theory of the decision of the Supreme Court in the Williams case; it

insufficiently directs the District Court in respect of its duty in this and future cases; in its announcement of law to be applied and procedure to be followed in maintenance suits involving a valid foreign decree of divorce, and in the application of that law and procedure to the present case which involves only an invalid foreign decree, it is a departure from accepted appellate judicial methods, with consequent unwarranted hardship to Mrs. Hopson and possibly also to Dewane Hopson; it is unjust to Mrs. Meredith if her petition for rehearing is not granted and to Mr. Meredith if it is.

I think the court should, under present law clearly applicable, affirm the judgment of the District Court in Mrs. Hopson's favor.

WILBUR K. MILLER, Circuit Judge (dissenting).

When this suit was filed neither party was domiciled, resident or employed in the District of Columbia. The wife and child lived in Oxon Hill, Maryland, and the husband lived there also, about a block away. Neither party had any property in the District. Process was served on the husband while he was passing through the District of Columbia. Yet the District Court exercised jurisdiction.

We said in Curley v. Curley, 1941, 74 App.D.C. 163, 165, 120 F.2d 730, 732:

"* * * [T]he public policy of the District of Columbia does not require its courts to take jurisdiction of a matrimonial dispute between two persons who are neither domiciled in the District nor even residents thereof; especially where there is no showing that the welfare of children, rights of property, or other public interests, in the District are in any way affected."

In Melvin v. Melvin, 1942, 76 U.S.App.D.C. 56, 57, 129 F.2d 39, 40, this court quoted the foregoing excerpt from the Curley opinion and then added:

"* * * * Our view was, and is, that the District Court's undoubted jurisdiction of maintenance suits between nonresidents domiciled elsewhere should not be exercised unless unusual circumstances justify trial here."

There are no unusual circumstances in the present case to justify the exercise of jurisdiction by the District Court. I would reverse with directions to dismiss, as I think the court clearly abused its discretion in exercising jurisdiction.

But, assuming that the District Court properly accepted jurisdiction— which this court now holds—my view is that the judgment should be affirmed for the reasons set forth in the dissenting opinion of Chief Judge STEPHENS, in which I concur.