## MEREDITH v. MEREDITH.

### No. 11310.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 4, 1952.

Decided April 9, 1953.

Messrs. W. Byron Sorrell and Charles F. O'Neall, Washington, D. C., for appellant.

Mr. Alvin L. Newmyer, Washington, D. C., with whom Mr. Alvin L. Newmyer, Jr., Washington, D. C., was on the brief, for appellee.

Mr. Armand Newmyer, Washington, D. C., also entered his appearance in behalf of the appellee.

Before CLARK, PRETTYMAN and PROCTOR, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from an order dismissing appellant's counterclaim for separate maintenance.

The facts are as follows: The parties were married in September, 1946, and they separated in February, 1948, when appellee (husband) deserted appellant because of alleged cruelties. In August, 1948, appellee filed an action for a limited divorce in the District of Columbia, and in October appellant was awarded alimony pendente lite, by consent of appellee. In April, 1950, an amended and supplemental complaint for an absolute divorce, charging constructive desertion, was filed by appellee, but later that same year he made a motion under Rule 41(a) (2) Fed.Rules Civ.Proc. 28 U.S.C.A. to dismiss the complaint on the ground that, having moved to Texas, he no longer was a resident of the District of Columbia. The motion was granted but the court simultaneously permitted appellant to file a counterclaim for separate maintenance. That counterclaim upon which this appeal is based, was filed on September 1, 1950.

On August 6, 1951, appellant received a copy of a complaint for a divorce a vinculo filed by appellee in Bexar County, Texas, but she chose not to appear to contest the Texas proceedings and appellee secured a decree of divorce in appellant's absence, on August 27, 1951. That decree made no mention of alimony or maintenance. Thereafter, on October 3, 1951, appellant's counterclaim was tried, and, upon appellee's production of the Texas divorce, the District Court dismissed the counterclaim on the ground that the action had become moot.

The first question before us is whether we are bound by the full faith and credit clause[1] to regard the Texas divorce as conclusive of the issue of separate maintenance here. We answer that question in the negative.

The same problem was before us in the case of Gullet v. Gullet, 1945, 80 U.S.App. D.C. 73, 149 F.2d 17, which, on its facts, was very similar to the instant case. There, the wife had been awarded maintenance pendente lite after an abandonment by her husband. Later, she moved to make the award permanent but by that time the husband had already secured an absolute divorce in Florida, and we held that the full faith and credit provision precluded the granting of permanent maintenance here under those circumstances. That decision was based on the premise that a divorce a vinculo necessarily dissolves all of the incidents of matrimony, including the right of the wife to receive, and the duty of the husband to provide for, maintenance and support, and that these rights and duties therefore could not survive a dissolution of the marriage relationship.

That premise, however, was undermined and repudiated by the Supreme Court decision in Estin v. Estin, 1948, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561. In that case, the husband abandoned his wife in New York and then obtained a Nevada divorce upon constructive service and no appearance by the wife. Prior to the time the husband left New York, the wife obtained a separation decree awarding her permanent alimony[2] which the husband stopped paying upon receiving the divorce. The courts

---

1. U.S.Const. art. IV, § 1.

2. Which is equivalent to what in the District of Columbia would be described as permanent maintenance.

of the State of New York held that "alimony" could survive a divorce and gave judgment to the wife for all of the arrears, including those which had accrued since the divorce. The U.S. Supreme Court affirmed, saying that in view of New York's policy of providing further for the maintenance and support of the wife, Nevada had no power to adjudicate her rights in the New York judgment and that consequently New York could continue to enforce that judgment without violating the full faith and credit clause and without thereby in any way questioning the validity of the Nevada divorce or impairing its effect for other purposes.

The import of that decision on the law in this jurisdiction is clear. It requires a re-evaluation of the prior cases which were based upon the assumption that the District of Columbia was under a Constitutional prohibition against disregarding a foreign divorce when asked to enter or to enforce[3] a local maintenance decree. But the Estin case does not, as appellant argues, have the effect of placing an *obligation* upon the courts in one jurisdiction to compel the payment of maintenance and support to a resident wife entitled to such maintenance except for a divorce entered elsewhere, but is limited to the proposition that the courts of each state have the *power* so to do, for, of course, the public policy of the forum is restricted by the constitutional provision only insofar as it seeks to deny recognition to foreign divorces but not insofar as it accords recognition. In other words, a court may still, upon the general principles

of comity, give effect to a foreign divorce even as to the issue of maintenance. The doctrine of separability of divorce, then, as developed in the Estin decision,[4] removes the problem from the Constitutional orbit and leaves the issue squarely up to each individual state to be solved there in conformity with its public policy and in the light of the many conflicting interests and considerations so patently involved.[5]

What, then, is the policy of the District of Columbia? In the first place, it may be well to keep in mind that, contrary to the Estin situation, Mrs. Meredith had no judgment of permanent maintenance at the time her then husband obtained his divorce.[6] Even New York does not seem to go so far as to award maintenance under those circumstances. In Adler v. Adler, 1948, 192 Misc. 953, 81 N.Y.S.2d 797, 803, a New York court carefully distinguished the case of maintenance sought subsequent to a foreign divorce from the facts in Estin, and said that it questioned whether the interest of a wife in maintenance and support could be enforced "unless it was reduced to a judgment prior to the dissolution of the marriage." See also Morton v. Morton, 1950, 199 Misc. 547, 99 N.Y.S.2d 155.

In our opinion, the law in the District of Columbia clearly necessitates the conclusion that there can be no award of maintenance once a decree of divorce has become effective.

This action was brought under Section 415 of Title 16 of the District of Columbia Code. The very language of the statute[7]

---

3. While the Estin decision involved merely the enforcement of a maintenance order entered prior to the foreign divorce, its reasoning would seem to be equally applicable to an original grant of maintenance after the divorce. Either may be done consistently with the full faith and credit clause.

4. But foreshadowed by the old case of Barber v. Barber, 1859, 21 How. 582, 16 L.Ed. 226.

5. Several states have expressed a public policy contrary to that of New York. See, e. g., Esenwein v. Commonwealth of Pennsylvania, ex rel. Esenwein, 1945, 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608;

Miller v. Miller, 1925, 200 Iowa 1193, 206 N.W. 262.

6. Consequently we need not and we do not decide whether the District of Columbia would compel payments to the wife under a decree of permanent maintenance entered here prior to a foreign divorce and not incorporated therein.

7. "Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, pendente lite and permanently, may decree that he shall pay her, periodically, such sums as would be allowed to her as pendente lite or permanent alimony in case

limits suits for maintenance to parties who are "husband" and "wife". No interpretation, however liberal, can eliminate those essential prerequisites. Obviously, as of the date of entry of the Texas decree— a decree which is not alleged to be invalid as beyond the jurisdiction of the Texas court—the parties no longer are husband and wife.

Judge Stephens, writing for this court, held in Rapeer v. Colpoys, 1936, 66 App. D.C. 216, 85 F.2d 715, 717, that Section 75 of Title 14 of the D.C.Code, which in all essential respects is identical with the present § 16–415, does not authorize a maintenance action on behalf of minor children against their divorced father, precisely because suit may be brought only against a "husband" who fails to support his "wife and minor children".[8] The rationale of that decision is of course equally applicable to an action by a woman against her former husband.

And in Curley v. Curley, 1941, 74 App. D.C. 163, 120 F.2d 730, 731, where the wife

attacked the jurisdictional basis of a Florida divorce decree and sought maintenance in the District of Columbia, we held that "whether or not the Florida decree was entitled to full faith and credit, it may still be recognized on the ground of comity * *" and we reversed a District Court judgment awarding maintenance.[9]

The pattern emerging from the statute and the decisions is one of a public policy in the District of Columbia which, based on principles of comity, requires the wife to seek alimony in the jurisdiction granting the divorce. Failure to do so, will bar her from thereafter availing herself of Section 16–415, just as failure to obtain alimony at the time a divorce is secured here has the effect of extinguishing a prior D.C. maintenance order. Holmes v. Holmes, 1946, 81 U.S.App.D.C. 132, 155 F. 2d 737, 166 A.L.R. 1000. If there is a measure of harshness in that rule, the remedy lies not with us, for the sociological aspects are matters for the Congress and the people.

Affirmed.

8. But it should be borne in mind that, quite apart from any statute, equity will provide a remedy for a violation of the duty of a husband or a father to support and maintain his wife or minor children. Such duty has been enforced in this jurisdiction in situations similar to that of the Rapeer case by courts having general equity powers. Tolman v. Tolman, 1893, 1 App.D.C. 299; Schneider v. Schneider, 1944, 78 U.S.App.D.C. 383, 141 F.2d 542; Wedderburn v. Wedder-

of divorce for the maintenance of herself and the minor children, if any, committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to the payment of permanent alimony." 31 Stat. 1346, as amended, 63 Stat. 213 (1949).

burn, 1917, 46 App.D.C. 149; Bates v. Bates, 1944, 79 U.S.App.D.C. 14, 141 F. 2d 723; Howard v. Howard, 1940, 72 App.D.C. 145, 112 F.2d 44; Lesh v. Lesh, 1903, 21 App.D.C. 475. And see, recently, Scholla v. Scholla, 1953, 92 U.S.App. D.C. —, 201 F.2d 211.

9. See also the decision in Gullet v. Gullet, 1949, 85 U.S.App.D.C. 12, 174 F.2d 531, rendered when that case was heard here for a second time, after the Estin decision had been handed down. As we read that case, it intimates that maintenance would not have been granted here regardless of the inapplicability of the full faith and credit clause if only the Florida court granting the divorce had had jurisdiction. And see, note 2 of the Curley decision.