**Mary Griemsman SEARS, Appellant**

v.

**John C. SEARS, Appellee.**

**No. 16141.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 10, 1961.

Decided July 6, 1961.

Petition for Rehearing Denied
Aug. 24, 1961.

Mr. Frederick A. Ballard, Washington, D. C., with whom Mr. John W. Kern, III, Washington, D. C., was on the brief, for appellant.

Mr. John Alexander, Washington, D. C., with whom Mr. Walter W. Johnson, Jr., Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and PRETTYMAN and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

In 1929, appellee [plaintiff] married Mary Elizabeth Lynch in New Jersey. They lived together until 1944 and a child, now emancipated, was born of that marriage. In 1942, appellee had met appellant [defendant] at the place of their common employment. They became friendly and appellee told appellant that his marriage to Mary Elizabeth Lynch Sears was "over and dead," even though he was living with her at that time. He and appellant began seeing each other socially about a year later, while appellee was still living with his wife. Shortly thereafter, they became intimate. That relationship continued for about eight months, at which time appellee decided to divorce his wife and marry appellant. Because of religious convictions, his wife refused to participate or assist in a divorce proceeding. Appellee's affairs prevented his leaving the New York area, where all the parties were domiciled, and he realized that he was unable to obtain a divorce there without his wife's cooperation. He consulted a Mexican attorney in New York (whose name he obtained "out of the yellow pages of a phone book") and was told that he could obtain a so-called mail-order divorce from a Mexican court. He was further advised that such a divorce would be of doubtful validity but that it would be "good until it was questioned." [1]

Appellee discussed all the foregoing facts with appellant, telling her of his conference with the lawyer, and decided to obtain the Mexican divorce and to marry appellant on the strength of it. In 1944, after appellee obtained the divorce, they participated in a ceremonial marriage in Connecticut, a state selected on the advice of the New York attorney, who had mentioned Connecticut and Maryland as two states which did not inquire too closely into the circumstances surrounding previous divorces.

Appellee and appellant lived together as man and wife for fifteen years, until they separated in 1959, during which time she was, to all intents and purposes, his lawful wife. She acted as his hostess in a great deal of entertaining which his business required of him. At the present time, appellee is an executive of a trade association, with a substantial earning capacity, presently at the rate of $17,000 per year. Appellant has no real estate, or other assets; her "take home" pay is $189.84 per month; she has high blood pressure, and now lives with her mother, whose only resource is her social security payments. At the time of the hearing in the Municipal Court appellant was forty-eight years of age.

In 1959, shortly after the parties separated, appellee filed a complaint in the Municipal Court of the District of Columbia, seeking an annulment of his "second" marriage, asserting the invalidity of the Mexican divorce. Appellant filed a counter-claim for maintenance, and claimed that appellee was barred from showing the invalidity of the Mexican divorce by laches, unclean hands, and the operation of § 30–104, D.C.Code (1951). The trial court, in a lengthy and careful opinion, granted judgment for appellee on both the complaint and the counter-claim. In the opinion of the trial judge, the relationship of the parties was meretricious from its inception, and the divorce and marriage served merely to "cloak it with an aura of respectability." The trial judge further held that no equitable estoppel could be invoked by appellant against appellee because, in effect, she was just as guilty as he, by virtue of her complete knowledge of the facts.

An appeal was taken to the Municipal Court of Appeals, which affirmed the de-

---

1. So far as appears, appellant never saw the Mexican lawyer and all the information she obtained was through appellee. She testified, contrary to appellee, that she understood from him that if they were married in a state that recognized incompatibility (which he told her was to be the ground upon which the Mexican divorce was to be based) "we did not have anything to worry about," and that, unless Mrs. Sears ever tested the validity of the divorce by contesting it, it might be all right.

cision of the trial court. Sears v. Sears, D.C.Mun.App.1960, 166 A.2d 748, 752. It was the opinion of the appellate court that the statutory estoppel of § 30–104 does not operate in the case of a marriage which is void under § 30–101, and that there was no reason for equity to refuse to exercise its jurisdiction (granted by § 30–102) to declare such a marriage a nullity because such a declaration would be required sooner or later.

This court granted appellant's petition for leave to appeal under § 11–773, D.C. Code (1951).

### I

Since the decision in this case involves construction of § 30 paragraphs 101–104 of the D.C.Code, we quote those sections in pertinent part.

"§ 30–101. * * * The following marriages are *prohibited* in the District of Columbia and shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in any collateral proceedings, namely:

\*   \*   \*   \*   \*   \*

"Third. The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce."

"§ 30–102. * * * Any of such marriages may also be declared to have been null and void by judicial decree."

"§ 30–103. * * * The following marriages * * * shall be *illegal,* and shall be void from the time when their nullity shall be declared by decree, namely: [Marriage of a lunatic, marriage consent to which has been obtained by fraud or force, marriage of any person physically incapable of entering the marital state, marriage of an infant.]"

"§ 30–104. * * * [Outlining procedure for annulment]. [N]o such proceedings shall be allowed to be instituted by any person who, being fully capable of contracting a

marriage, has knowingly and wilfully contracted any marriage declared *illegal* by the foregoing sections." [Emphasis supplied.]

Appellant claims that § 30–104 bars the present action by operation of statutory estoppel. We consider this contention first because, if correct, it would dispose of this litigation.

■ We think appellant correctly argues that the statutory phrase "fully capable of contracting a marriage" refers to a person with intrinsic legal capacity and in no way alludes to extrinsic impediments to a valid marriage. However, we note that § 30–104 is limited by its own terms to marriages declared illegal. This term "illegal" is used in § 30–103, while appellant's marriage is described in § 30–101 and is declared "prohibited." We think that § 30–104 flows from § 30–103, which declares voidable those marriages in which the consent of one or both parties to the contract is impaired. Section 30–104 merely limits the remedy of annulment to the party whose consent was impaired when the other party, having full capacity, knew of the impairment; thus, the section is closely analogous to the rules applicable to recission of an ordinary contract between an infant and an adult. See Rhodes v. Rhodes, 1938, 68 App.D.C. 313, 314, 96 F.2d 715, 716, where the court said:

"[T]he District of Columbia Code * * * classifies some marriages as void and others as voidable, and *in the latter case* prohibits * * * the bringing of actions to declare them void." [Emphasis supplied.]

See also the opinion of the Municipal Court of Appeals in the instant case, 166 A.2d at page 751–752.

### II

■ We turn now to the question raised by appellant of whether appellee is barred from showing invalidity of the Mexican divorce by equitable principles of laches and estoppel. We think there is no basis here for application of the

bar of laches. The complaint in this case alleges that appellee immediately prior to filing the complaint, was advised for the first time of the alleged invalidity of the Mexican divorce, and his testimony supports that allegation. In this respect, we think the trial judge's finding that the action is not barred is amply supported by the record.

### III

The question of equitable estoppel presents a more difficult problem, particularly in the light of seemingly conflicting prior decisions of this court.

The threshold question is whether § 30–101 operates as a bar to such equitable defenses. The earliest decisions of this court held that such a bar was raised by the statute. See Frey v. Frey, 1932, 61 App.D.C. 232, 59 F.2d 1046, and Simmons v. Simmons, 1927, 57 App.D.C. 216, 19 F.2d 690, 54 A.L.R. 75. That blanket rule was overturned in Goodloe v. Hawk, 1940, 72 App.D.C. 287, 113 F.2d 753; and this later ruling was followed in Saul v. Saul, 1941, 74 App.D.C. 287, 122 F.2d 64. The Goodloe ruling was again followed in Ruppert v. Ruppert, 1942, 77 U.S.App.D.C. 65, 134 F.2d 497; but Justice Justin Miller, dissenting, raised the point that the public policy expressed by § 30–101 should serve as a bar to equitable defenses, on the theory that, since such marriages were declared absolutely void by statute, use of equitable defenses would in some cases serve to contravene the statutory policy.

The early theory was revived by Oliver v. Oliver, 1950, 87 U.S.App.D.C. 334, 185 F.2d 429, which was cited by the trial court and the Municipal Court of Appeals in the instant case. The facts in Oliver present a real contrast with Goodloe, Saul and Ruppert, where the parties did live together as man and wife, and contrast particularly with Goodloe and Saul, where the party seeking to challenge the divorce decree actively participated in securing the very decree sought to be attacked and where the spouse of the prior marriage had remarried in reliance on the divorce decree. In Oliver,

a child of a marriage predicated on a prior divorce decree and his mother sought maintenance and support; the defendant's answer denied paternity and cohabitation, and collaterally attacked the effect of his own prior divorce as well as alleging that he had been induced to enter the marriage by fraud and coercion.

■ It is our opinion that a court of equity, in determining whether to interpose the bar of equitable estoppel, must consider all the factors of the particular case at bar, the parties involved, the effect of the ultimate decision on third parties who are not before the court, the nature of the rights sought to be vindicated and, as well, public policy as expressed by pertinent statutes and prior judicial declarations.

■ Applying the foregoing principle to the instant case, we see that this proceeding resolves itself into a claim by a "wife" against her "husband" for maintenance. The parties lived together for fifteen years as man and wife, and the record furnishes not the slightest ground for doubt that they intended to be man and wife. Any bar which might be raised to prevent appellee from asserting the invalidity of the Mexican divorce against appellant would in no way give validity to the Mexican divorce or to the Connecticut marriage by affecting any persons other than appellant and appellee; and it is this lack of effect on other persons which impels us to hold that the present case is an appropriate one in which to raise the bar of estoppel.

The rights of this woman against this man are entirely personal and, in fact, include only maintenance. Any third party whose interest is in any way affected by the validity (or lack of it) of the foreign divorce remains free to contest that divorce. Thus, as against appellee's wife, no rights on behalf of appellant as to dower could pervail; and, in the event of appellee's death intestate, Mary Elizabeth Lynch Sears would be entitled to dower and her statutory share in his personalty, and the child of Mary Eliza-

beth Lynch Sears and appellee the balance. It is true, of course, that the Mexican decree can have no legal effect. This means that no judicial decree is needed to give these parties the status they had when they first met in 1942. By the same token, application of estoppel here merely leaves these parties where they were when they entered court in this action, at which time (and for fifteen years prior thereto) they considered themselves to be married to each other.

We agree with the Municipal Court and the Municipal Court of Appeals that it is not the policy of courts in this jurisdiction to give any force or effect to Mexican mail-order divorce decrees. We are also impressed by the fact that appellant is not entirely blameless. However, we are here asked to determine personal rights as between two, and only two, persons. We do not think that appellee should be permitted to show, in order to escape all future obligations to support the woman whom he took as his second wife, the invalidity of a divorce which he obtained expressly in order to marry her and on which they both relied in that marriage.

"Courts grant relief against present wrongs and to enforce an existing right, although the property involved was acquired by some past illegal act." Loughran v. Loughran, 292 U.S. 216, 228, 54 S.Ct. 684, 689, 78 L.Ed. 1219.

"Equity does not demand that its suitors shall have led blameless lives." Id. 292 U.S. at page 229, 54 S.Ct. at page 689.

The Oliver case is distinguishable in that the husband, there sued for maintenance of his second wife and support of a child, not only asserted the invalidity of the marriage but also denied cohabitation following the marriage, denied paternity of the child and alleged that he had been induced to marry the child's mother by fraud and coercion. As between the defendant and the child's mother, the equities were clearly in favor of the defendant, and the mother was seeking to use an equitable defense to shield her own inequitable conduct.

We should note at this point that equitable estoppel is dependent on the particular facts of each case. The prior decisions of this court cited above convincingly show the futility of any attempt to lay down sweeping general rules. We might also add that the decision to apply estoppel against appellee in this case is in no way to affect the status of appellee and appellant with respect to any third parties.

We do not, by this opinion, intimate an opinion as to whether appellant is entitled to support. This will depend upon the showing made by the parties—the incomes of the parties, their respective condition of health, the contribution (if any) now being made by appellee to Mary Elizabeth Lynch Sears, and such other elements that enter into the usual maintenance case. All we decide here is that appellee is estopped to deny the validity of the Connecticut marriage for purposes of this maintenance case only.

The judgment of the Municipal Court of Appeals is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*