**In re ESTATE of Sophus Dee HANSON, Deceased.**

No. 99914.

United States District Court
District of Columbia.

Oct. 25, 1962.

John Alexander and Walter W. Johnson, Jr., Washington, D. C., for Anne Baker Bein Hanson, movant.

John A. Beck, Frost & Towers, Ellis N. Slack, Washington, D. C., for executor and residuary beneficiary.

TAMM, District Judge.

This case is before the Court on a motion for summary judgment.

The facts of the controversy are summarized as follows: In 1934, Anne Baker Bein (Hanson), movant in the instant case, was lawfully married to one Raymond Bein. They lived together as man and wife until May of 1944 when they separated. In October, 1944, Mrs. Bein took annual leave from her job at the Department of Justice and moved to Miami, Florida. In December, 1944, while still in Florida, she was transferred to an on-leave-without-pay status by the Department of Justice. The reason for her move to Florida, according to her pleadings, was for her health. Early in February, 1945, she filed a Bill of Complaint for Divorce from Raymond Bein in the Circuit Court of Dade County, Florida. Service of the Bill of Complaint was obtained upon Mr. Bein by publication. Before a Special Master in the Dade County Court, Mrs. Bein testified that she held a permanent position of employment in Florida and that she intended to make Florida her permanent home. The Court found that it had jurisdiction of the marriage res, and on the 16th day of March, 1945, entered a final decree of divorce. On the 2nd day of April, 1945, Anne Baker Bein resumed her duties in the Department of Justice in the District of Columbia and has thereafter continued to be a resident of the District of Columbia.

On August 26, 1949, Anne Baker Bein (Hanson) entered into a marriage ceremony in the District of Columbia with Sophus Dee Hanson, now deceased. No children were born of that marriage. On December 10, 1958, Mrs. Hanson filed a complaint in the Municipal Court for the District of Columbia for an absolute divorce from Sophus Dee Hanson, alleging that "the plaintiff and the defendant, S. Dee Hanson, were lawfully married in Washington, D. C., on to-wit, August 26, 1949 * * *" Sophus Dee Hanson filed a sworn answer to that complaint in which he admitted all of the allegations of the Complaint save those concerning his cruelty and desertion, and in addition, filed a counterclaim for an absolute divorce on the ground of two years desertion. In this counterclaim, Mr. Hanson affirmatively alleged that the parties were married in the District of Columbia on August 26, 1949.

On July 23, 1959, the Municipal Court of the District of Columbia entered its findings of fact and judgment. One finding of fact stated specifically that, "The parties were ceremonially married to each other in the District of Columbia on August 26, 1949." The judgment further

provided that the counterclaim of Mr. Hanson for divorce on the grounds of desertion by Mrs. Hanson was granted and that the bonds of matrimony existing between the parties are "dissolved, provided, however, that the judgment dissolving the marriage shall not be effective until the expiration of six months from the date of its entry." No appeal was taken from this judgment.

On January 10, 1960, 12 days prior to the running of the six month period, Sophus Dee Hanson died. A suggestion of death was filed in the Municipal Court, and the divorce action was abated.

On February 5, 1957, Sophus Dee Hanson had executed his Last Will and Testament, leaving the sum of Five Dollars to his *"putative* wife, Anne Baker Bein Hanson—whose divorce obtained on March 16, 1945, from Raymond Bein in the Circuit Court, Miami, Dade County, Florida, was and is solely ex parte, fraudulent and illegal, except in the State of Florida * * *" On July 19, 1960, Anne Hanson filed, in the instant case, a renunciation of the bequest to her in said will and requested that she be allowed the family allowance out of the personal estate as the surviving widow.

Subsequently, the executor and the residuary legatee filed a complaint in the present suit for declaratory judgment to "determine the status and rights of the putative widow." The complaint alleged that the 1949 marriage between Anne Baker Hanson and Sophus Dee Hanson, deceased, was void because the prior divorce granted to Anne Baker Hanson in Florida was invalid because of a lack of jurisdiction in the Florida court. Anne Hanson filed an answer to this complaint contending that the marriage to Mr. Hanson was valid and that, further, none of the parties to this litigation may now collaterally attack the Florida decree in this jurisdiction. Mrs. Hanson further contended that the parties, standing in privity with the deceased, are estopped to question the validity of that marriage because that question was determined in the divorce action in the Municipal Court.

Mrs. Hanson has filed a motion for summary judgment as to the complaint for declaratory judgment, and this motion is presently before the Court. The motion and answer raise numerous issues, among which are the following:

■ (1) Was the divorce decree between the deceased and Mrs. Hanson in the Municipal Court final so as to preclude Mrs. Hanson from claiming the status of the widow of the deceased? The District of Columbia decisions on this subject leave no doubt that the decree of divorce dissolving the marriage did not become final. Several reported cases have dealt directly with this question, and all have reached the same result. See Wesley v. Brown, 90 U.S.App.D.C. 351, 196 F.2d 859 (1952); Oliver v. Oliver, 87 U.S.App.D.C. 334, 185 F.2d 429 (1950), and Dillard v. Dillard, 107 U.S. App.D.C. 214, 275 F.2d 878 (1960). The Court in the Wesley case made the following statement, which seems conclusive as to this issue in the present case also:

"In Oliver v. Oliver, 1950, 87 U. S.App.D.C. 334, 185 F.2d 429, 431 this court dealt with the very question of finality of a divorce decree and ruled that Section 16–421 ' * * contemplates a provisional decree of divorce only, which cannot mature and become effective until lapse of the intervening time' and that therefore the parties do not cease to be married until after the period provided."

■ (2) The second question presented in the motion and answer goes to the effect of the 1945 Florida divorce. This divorce proceeding clearly involves some question as to the validity of the Court's jurisdiction. The divorce was obtained in an ex parte proceeding; the husband was served only by publication and never was within the jurisdiction of the Court. Under these circumstances, the second Williams v. North Carolina case, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577. is directly in point. In that case, the Supreme Court dealt directly with the ex parte divorce situation. While the Su-

preme Court cases [1] since Williams have qualified and explained the original rule regarding collateral attacks on foreign courts' jurisdictional findings, none of these decisions has involved third-party attacks on ex parte proceedings; in fact, many have clearly distinguished themselves from the Williams v. North Carolina ex parte situation. For example, the Court in the Sherrer case at 334 U.S. 355 and 356, 68 S.Ct. 1093, said: "[I]t is one thing to recognize as permissible the judicial reexamination of findings of jurisdictional fact where such findings have been made by a court of a sister State which has entered a divorce decree in *ex parte* proceedings [citing Williams v. North Carolina]. It is quite another thing to hold that the vital rights and interests involved in divorce litigation may be held in suspense pending the scrutiny by courts of sister States of findings of jurisdictional fact made by a competent court in proceedings conducted in a manner consistent with the highest requirements of due process and in which the defendant has participated." In the more recent cases where the foreign divorce proceedings have been defended, the application of Full Faith and Credit seems always to imply elements of Due Process and Res Judicata. When the original proceedings were ex parte, as in the Williams cases, these other considerations do not exist to such a great extent, and the courts have been less hesitant to review jurisdictional questions. Speaking of cases in which jurisdictional issues were contested, the Supreme Court in the Sherrer case points out that "[w]e do not conceive it be in accord with the purposes of the full faith and credit requirement to hold that a judgment rendered under the circumstances of this case may be required to run the gantlet of such collateral attack in the courts of sister States before its validity outside of the State which rendered it is established or rejected. That vital interests are involved in divorce litigation indicates to us that it is a matter of greater rather than lesser importance that there should be a place to end such litigation. And where a decree of divorce is rendered by a competent court under *the circumstances of this case,* the obligation of full faith and credit requires that such litigation should end in the courts of the State in which the judgment was rendered." (334 U.S. at 356, 68 S.Ct. at 1093, emphasis supplied).

In the leading case of Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L. Ed. 552, the Supreme Court reviewed all of its recent cases involving recognition of foreign divorces. In regard to the Williams cases, the Court said: "[T]he later Williams case left a sister state free to determine whether there was domicile of one party in an '*ex parte*' proceeding so as to give the court jurisdiction to enter a decree. 325 U.S. at 230, n. 6, 237, dissent 277, 65 S.Ct. 1095, 1098, 1117." The Court then cited and discussed the other leading cases, including Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26. Esenwein v. Commonwealth, 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608; Rice v. Rice, 336 U.S. 674, 69 S.Ct. 751, 93 L.Ed. 957; Sherrer v. Sherrer (supra); Coe v. Coe (supra) and Estin v. Estin (supra). The Court then made the following statement:

"It is clear from the foregoing that, under our decisions, a state * * · * must give full faith and credit to an out-of-state divorce by barring either party to that divorce *who has been personally served or who has entered a personal appearance* from collaterally attacking the decree. Such an attack is barred where the party attacking would not be permitted to make a collateral attack in the courts of the granting state." 340 U.S. at 587, 71 S.Ct. at 477. (Emphasis supplied).

[1]. See especially Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146; Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 1097, 92 L.Ed. 1451; Sherrer v. Sherrer, 334 U.S. 345, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429; Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552. Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L. Ed. 1561.

It will be noted that the Court carefully limits this rule to actions in which both parties were before the Foreign court when the decree was granted. The Williams rule regarding ex parte situations has never been modified. It is unclear, however, whether the rule quoted above regarding the ability of the party attacking the divorce "to make a collateral attack in the courts of the granting state" was meant by implication to apply to ex parte proceedings also. The Supreme Court has never announced such a rule. In the District of Columbia, the Johnson v. Muelberger decision has been often followed (see especially Wolf v. Wolf, D. C.Mun.App., 162 A.2d 776). But none of these cases has involved attacks on ex parte divorce decrees. Other cases such as Hopson v. Hopson, 95 U.S.App.D.C. 285, 221 F.2d 839, have dealt directly with ex parte decrees. Although these cases have held such decrees not to be entitled to full faith and credit, they have not reached the secondary question of standing to attack them.

In the present case, it appears that no determination of the applicability of the Johnson v. Muelberger rule to collateral attacks on foreign ex parte divorces will have to be made, for regardless of which alternative is selected, it appears that the movant widow will prevail.

Let us assume, first, that the rule of Johnson v. Muelberger, which directs the courts to look to the law of the granting state, was meant to apply also to ex parte divorces. What would be the decision of the Florida courts in the present case? This question was developed fully by opposing counsel in their excellent briefs. After a careful review of the reported Florida decisions, including the leading cases of State ex rel. Willys v. Chillingworth, 124 Fla. 274, 168 So. 249, Beckwith v. Bailey, 119 Fla. 316, 161 So. 576, and de Marigny v. de Marigny, Fla., 43 So.2d 442, the Court is convinced that the executor and residuary legatee would have no standing to attack the decree in the courts of Florida. While the Chillingworth and Beckwith cases seem to lend strength to their position to attack

the decree, the de Marigny case, decided by the Florida Supreme Court en banc, seems dispositive of the issue. In the de Marigny case, the collateral attack was made by defendant's second wife. The second wife in her complaint alleged that the Florida courts had no jurisdiction over the parties when a divorce was granted to the husband's first wife. The result, as contended by the second wife, was that the husband's second marriage was therefore void. In rejecting this contention, the Florida Supreme Court discussed the issue as follows:

"The bill of complaint constitutes a collateral attack upon a final decree of divorce which was rendered by a court of competent jurisdiction and which appears, upon the record of the proceedings in the cause in which it was entered, to be valid in every respect.

"Under such circumstances a final decree is at most voidable only. Ponder v. Mosley, 2 Fla. 207, 48 Am. Dec. 194; Bryant v. Bryant, 101 Fla. 179, 133 So. 635. It is necessary in this case in order for the appellant-petitioner to show the invalidity of the final decree of divorce for her to bring before the Court matters which are dehors the record. *We have held many times that this may not be done by collateral attack.* [Numerous cases cited]" (Italics added).

In holding that the petitioner could not attack the divorce decree as a third party, the court stated:

"The decree of divorce which is under attack by the appellant-petitioner has not adversely affected the status or rights of the appellant-petitioner which existed at the time of the entry of the said decree."

Quoting from Freeman on Judgments, Vol. 1, page 36, Section 319, the Court added:

"It must not, however, be understood that all strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment

were given full faith and credit and effect, *would be prejudiced in some regard to some preexisting right,* that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause, nor appeal from the judgment, they are by law allowed to *impeach* it whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition. (Italics ours)."

In the present case, neither the deceased nor the residuary legatee had any rights in respect to Anne Baker Hanson or Raymond Bein at the time of the entry of the Florida divorce between those parties. The Court is not here asked to review the decree by Raymond Bein, the first husband, who was never personally served and never appeared in Florida. The attack of the executor and the legatee here constitutes a collateral attack on the Florida decree, and the Florida Supreme Court has clearly indicated that an attack of this nature cannot be made in these circumstances. Numerous recent Florida cases have specifically upheld the holding in the de Marigny case.

If it is assumed that the Johnson v. Muelberger case (supra) does not affect the original rule of Williams v. North Carolina in regard to *ex parte* divorces, it then becomes clear than an ex parte Florida divorce, based on questionable jurisdiction, is not entitled to full faith and credit. That this is the view of the courts of the District of Columbia seems to be indicated by the decision in the case of Hopson v. Hopson (supra). It will be noted in the present case that the question does not involve the recognition to be given to the foreign ex parte decree nor the divisibility of the divorce. These issues were well settled in Estin v. Estin (supra); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221; Meredith v. Meredith, 96 U.S.App.D.C. 351, 204 F.2d 64; and Hopson v. Hopson (supra). These cases involved issues of maintenance and support and were between (or involved) the parties to the

original ex parte divorce decrees. In these cases it was consistently held that "the full faith and credit clause does not operate as a bar to maintenance." (Quoting Hopson v. Hopson.)

While, under the rule of the Williams Estin, and May cases, the Florida decree is not entitled to full faith and credit, this does not finally dispose of the problem. For the question, then, must be asked whether the beneficiary and executor may attack the decree; in other words, do they have standing to raise the issue.

The issue of standing to attack a foreign divorce decree is one of great social importance. If any stranger were allowed to attack such decrees this would surely create a "merry-go-round of litigation" with the lack of certainty discussed by Associate Justice Rutledge in his concurring opinion in Melvin v. Melvin, 76 U.S.App.D.C. 56, 59, 129 F.2d 39, 42 (1942).

The District of Columbia Code, however, contains the following language:

"The following marriages are prohibited in the District of Columbia and shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in *any collateral* proceedings, namely: * * *

"Third. The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce." (Title 30, District of Columbia Code 1961, Sec. 101).

The beneficiary and executor have cited the case of Sears v. Sears, 110 U.S.App. D.C. 407, 293 F.2d 884, as controlling in regard to the issue of standing. In this case, a husband sued his second wife for an annulment of his marriage to her. The ground for his suit was the fact that he had obtained a Mexican mail-order divorce from his first wife some sixteen years earlier. He had been married to his second wife for fifteen years. In reversing the Municipal Court of Appeals, the U. S. Court of Appeals for the District of Columbia held that the husband was estopped to deny the validity of his

marriage to his second wife. In the opinion, after announcing the above ruling, Judge Bastian made the following statement:

"Any third party whose interest is in any way affected by the validity (or lack of it) of the foreign divorce remains free to contest that divorce. Thus, as against appellee's [first] wife, no rights on behalf of appellant [second 'wife'] could prevail; and, in the event of appellee's death intestate, [his first wife] would be entitled to dower and her statutory share in his personalty, \* \* \*" (110 U.S.App.D.C. 407, 410, 293 F. 2d 884).

It will be noted, however, in this dictum that although Judge Bastian said, "any third party whose interest is in any way affected," when he gave examples of persons entitled to standing, his examples related only to the first wife. As the first wife was a party to the Mexican divorce decree but was never personally served or within the jurisdiction of the court, it would appear that she clearly would have standing to collaterally attack its validity. Judge Bastian gives no other examples of what he means by "any third party."

In the present case Mrs. Hanson argues that the rule should be limited to parties whose interests were affected by the divorce decree at the time the decree was entered. Persons who acquired interests long after the entry of the decree should not, under this interpretation, be allowed standing to attack the original proceedings. This approach is most logical and seems to be consistent with the cases in this jurisdiction which have dealt with the issue.

Only one case in the District of Columbia has turned on the question of standing. This case was the 1951 decision of Brown v. United States, 91 U.S. App.D.C. 15, 196 F.2d 777. In this case, a decedent's first wife made claim to an account in the Retirement and Disability Fund of the Civil Service Commission. The Commission held that the decedent's second wife was his lawful widow and therefore entitled to the benefits. The

first wife appealed to the District Court, claiming that the alleged marriage between decedent and the second wife was void because the second wife's Maryland divorce decree was based on inadequate jurisdiction. The District Court granted a motion to dismiss the complaint, ruling that the plaintiff was without standing to attack the validity of the divorce decree. In affirming that ruling, the Court of Appeals made the following statement:

"Appellant was a stranger to the divorce proceedings. She had no interest in the same; no right or standing to qualify as a party to the proceedings and oppose a divorce. Yet here, many years after the decree became final, she contends that her recently acquired claim upon the Civil Service Fund, arising through her designation as the beneficiary, gives her the present right and standing to make this collateral attack against the jurisdiction of the Maryland court to enter the divorce decree. We think the contention is untenable."

In the present case, the executor and beneficiary were strangers to the Florida divorce proceedings. They had no interest in them; no right or standing to qualify as parties to the proceedings and oppose the divorce. Yet here, many years after the decree became final, they contend that their recently acquired claim under decedent's will arising through their designation as executor and beneficiary give them the present right and standing to make this collateral attack against the jurisdiction of the Florida court to enter the divorce decree. Can a precedent be more in point? The provisions of Title 30, Section 101 of the District of Columbia Code were in effect at the time of the Brown decision. Careful research has revealed no decision modifying or overruling it. Under these facts, it clearly forecloses any attempt by the executor or beneficiary to assert that they have any standing to attack the 1945 divorce decree.

While the doctrine of comity has been largely abandoned in cases involving rec-

ognition of foreign divorce decrees, the District of Columbia courts have long been disinclined to grant standing to strangers attempting to attack a foreign decree on issues of jurisdiction. In the case of Kraskin v. Kraskin, 70 App.D.C. 85, 104 F.2d 218 (1939) Cert. Den. 308 U.S. 568, 60 S.Ct. 81, 84 L.Ed. 477, for example, the Court listed "considerations of public policy which, in particular cases, have been persuasive in determining whether voluntary recognition should be given" to foreign divorce decrees not otherwise entitled to full faith and credit. Among these considerations, the Court listed "attacks made upon the decree only by third persons in spite of acquiescence therein by the divorced persons themselves." (At page 221). Again in the present case it can clearly be said that the attack is being made upon the decree only by third persons, in spite of acquiescence therein by the divorced persons themselves. In light of the use by the Court of the plural, "divorced persons," it would be wise to note that the Court in the present case has taken judicial notice of its own marriage license records, which indicate that Mr. Raymond Bein, Mrs. Hanson's first husband and the defendant in the Florida proceedings, was remarried in 1947. Under the applicable rulings, it seems clear that he would have standing to attack the Florida decree, but it would appear that he has acquiesced in its determinations.

In light of the above decisions, it is interesting to note that the courts, as a general rule, have been most hesitant to allow attacks on foreign divorce decrees, except when the attack is made by an interested spouse or the sovereign. All attacks by others, with but very few exceptions, have been rejected.

The numerous cases cited by the beneficiary and executor in their brief are in no way inconsistent with the above conclusions.[2]

While the above discussion is determinative of Mrs. Hanson's status as the decedent's widow and, therefore, establishes her right to prevail in the instant motion for summary judgment, other issues were raised in the pleadings which merit brief discussion at this time.

■■ (3) One such issue is the contention that the beneficiary and executor are estopped by the Municipal Court divorce proceedings from raising issues pertaining to the validity of Mrs. Hanson's marriage to the decedent. The doctrine of estoppel by judgment is a familiar one in the courts and clearly applies in the present case. It is a well established rule of law that a judgment rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and of their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or further action. It is also a well established principle of law that a final judgment precludes the relitigation of particular facts or issues litigated in a previous action, where the later action is between the same parties or their privies, although the causes of action may be different. The rule rendered in the first instance is denominated as the doctrine of res judicata, and the last rule referred to is known as the doctrine of estoppel by judgment.

The validity of the 1949 marriage between Sophus Hanson and Anne Hanson was put directly in issue by the pleadings filed in the Municipal Court divorce suit between the two. Mrs. Hanson alleged in paragraph three of her complaint for absolute divorce "that the plaintiff and the defendant, S. Dee Hanson, were lawfully married in Washington, D. C., on, to-wit, August 26, 1949, and of this marriage no children have been born." Sophus Dee Hanson filed a sworn answer to that complaint and counterclaimed for

2. Frey v. Frey, 61 App.D.C. 232, 59 F. 2d 1046; White v. White, 80 U.S.App. D.C. 156, 150 F.2d 157; Oliver v. Oliver, 87 U.S.App.D.C. 334, 185 F.2d 429; Sears v. Sears, 110 U.S.App.D.C. 407, 293 F.2d 884; Hitchens v. Hitchens (U.S. D.C.D.C.) 47 F.Supp. 73 (1942); Simmons v. Simmons, 57 App.D.C. 216, 19 F.2d 690, 54 A.L.R. 75; Wolf v. Wolf (supra) ; Gherardi DeParata v. Gherardi DeParata, D.C.Mun.App., 179 A.2d 723.

an absolute divorce on the ground of two years desertion. In his answer, Sophus Hanson admitted all of the allegations of the plaintiff's complaint save those relating to his alleged cruelty and desertion. In his counterclaim, he affirmatively swore that the parties were married in the District of Columbia on August 26, 1949. On July 23, 1959, the Honorable Godfrey L. Munter entered his findings of fact and judgment in that divorce action. Finding of fact numbered Two reads as follows:

> "The parties were ceremonially married to each other in the District of Columbia on August 26, 1959 * * *"

As no notice of appeal was filed by either party, and the time for noting an appeal had long passed before the decedent's death, the judgment of the Municipal Court was final and binding in all respects except as to the termination of the marriage itself which, by statute, could not become effective until six months from the entry of the judgment.

■■ As numerous cases in this jurisdiction have dealt with the application of the rule of estoppel by judgment, no lengthy discussion of this doctrine seems necessary. It is apparent from the pleadings filed and the judgment entered in the Municipal Court that Sophus Dee Hanson would now be estopped to deny the validity of his marriage to Anne Baker Hanson. The executor stands in the shoes of the deceased and can have no greater rights than the deceased himself, Janney v. Mandeville's Adm'r, 2 Cranch CC 31. The residuary legatee is in privy with the deceased, her father. The law is well settled concerning the rights of privies. The term, privity, denotes mutual or successive relationship to the same rights of property. The grounds upon which such persons are bound by proceedings to which the deceased was a party are that they are identified in interest; and whenever this identity is found to exist, all are similarly concluded. All privies, whether in estate, blood or in law, are estopped from litigating that which is conclusive on him with whom they are in privity. This doctrine has often been affirmed by the Supreme Court of the United States.[3]

■ (4) A final issue raised by the answer of the beneficiary and executor goes to Mrs. Hanson's status to attack the will. It is argued that even if Mrs. Hanson is the legal widow of the decedent, she is estopped by her own conduct from taking against the will. In support of this contention, the executor and beneficiary point out that Mrs. Hanson deserted the decedent, filed divorce proceedings against him, and when the case came on for trial was found by the court to be the guilty party. The divorce was granted to the decedent—against Mrs. Hanson. As Mrs. Hanson was guilty of conduct sufficient to support a decree of divorce against her, they say she should be barred from now claiming to be the decedent's lawful widow. As was pointed out above, no appeal was taken from the divorce decree, and the time for appeal has expired. The findings of the Municipal Court as to Mrs. Hanson's misconduct are, therefore, final and she is bound by them. The beneficiary and executor contend that she should not be permitted to take advantage of the fact that the decedent passed away just 12 days before the divorce became final and that she should be barred from recovery on general equitable grounds. The testator, similarly, specifically stated

3. Lovejoy v. Murray, 70 U.S. (3 Wall.) 1, 19, 18 L.Ed. 129; Robbins v. Chicago, 71 U.S. (4 Wall.) 657, 673, 18 L.Ed. 427; Hale v. Finch, 104 U.S. 261, 265, 26 L.Ed. 732; Brooklyn City & N. R. R. Co. v. National Bank, 102 U.S. 14, 22, 26 L.Ed. 61; Butterfield v. Smith, 101 U.S. 570, 25 L.Ed. 868; Litchfield v. Goodnow's Adm'r, 123 U.S. 549, 8 S.Ct. 210, 31 L.Ed. 199; United States v. California Bridge and Construction Co., 245 U.S. 337, 38 S.Ct. 91, 62 L.Ed. 332; Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009; Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; Tilton v. Cofield, 93 U.S. 163, 23 L.Ed. 858, and Johnson v. Muelberger (supra); see also 30 Am.Jur. 451, Judgments, Section 399.

in his will that his "putative wife" should receive only $5.00.

While this argument is very persuasive on moral grounds, the executor and decedent have been unable to cite any applicable cases supporting their contentions with the exception of In Re Fulton, (1936) 15 Cal.App.2d 202, 59 P.2d 508 and Walker v. Matthews (1941) 191 Miss. 489, 3 So.2d 820; 139 A.L.R. 486. The former case relies on a statute dissimilar to the District of Columbia Code; the latter depends on a greatly altered fact situation.

This argument, i. e., the intent of the testator versus the statute, has been raised in numerous will cases in the past and has been consistently rejected by our courts. While the argument in the present case is perhaps stronger than many rejected in the past, it is based on the same rationale.

The District of Columbia Code, Title 18, Section 211 sets forth the provisions for renunciation of devises and bequests to a spouse. Mrs. Hanson has filed such a renunciation in this case. The Code sets forth no exceptions to a widow's right to elect to take against the will except in cases where a wife by her adulterous conduct is barred from claiming dower rights (Title 18, Section 203). The Code contains no other exceptions to this rule, and the courts have introduced none.

The Court is not unmindful of the fact that the annotation, "Misconduct—Rights in Spouse's Estate," 71 A.L.R. 277 at 285, states, In regard to the distributive share of the estate that the majority rule is that "[d]esertion or abandonment is generally held to be a bar to any right to share in the estate of the deceased spouse." After a careful review of the cases cited therein, however, the Court has concluded that the large majority of these cases rest on statutes dissimilar to those applicable in the District of Columbia. Additionally, in many of these cases the surviving spouse had remarried and was attempting to take under the will of a prior husband. A later annotation on the same subject, 139 A.L.R. at

489, reaches the same conclusions as those reached by the Court in that it states that in the majority of jurisdictions applicable statutes control.

After careful research, it seems that the case most directly in point is the Delaware case of Pike v. Satterthwaite (1940) 1 Terry 595, 40 Del. 595, 15 A.2d 430, which involved a statute very similar to the District of Columbia statute. In that decision, the Court said that as the statute provided for a cash allowance and as the statute was "positive and unequivocal," the courts were obliged to give the statute the meaning conveyed by its language. No exception could be created, it said, where none exists in the law. It becomes apparent, therefore, that the widow, regardless of her conduct as alleged in the present case, may lawfully elect to take against the will.

The motion for summary judgment is granted.

Counsel should submit appropriate order.