Francis J. Bloustein, J.
The plaintiff husband instituted this action for a divorce on September 12,1968, upon the ground that he and the defendant wife have lived separate and apart, pursuant to a decree or judgment of separation, for a period of two years after the granting of such decree or judgment and that hé has substantially performed all the terms and conditions of such decree or judgment (Domestic Relations Law, § 170, subd. [5]).
*771 The parties herein were married in New York City on June 11, 1950, and have two sons, the issue of the marriage, 14 and 11 years of age.
Defendant wife, as plaintiff, in an action in Westchester County, was awarded a judgment of separation on February 10, 1966, which was entered on February 11, 1966. On appeal, such judgment was affirmed (27 A D 2d 800 [2d Dept.]).
The judgment in the separation action provided, among other things, that the wife (defendant herein) was to receive $125 a week for the support and maintenance of herself and for the support, education and maintenance of the children of the marriage. She was awarded custody of the two children, with the right of visitation by the father. In addition, provisions were made for the wife to have exclusive possession of the premises owned by the parties as tenants by the entirety, the husband being charged with paying the mortgage installments and the real estate taxes for such abode directly to the mortgagee and Receiver of Taxes and for home insurance.
On December 10, 1968, the wife’s motion to modify the judgment of separation (increase in alimony and child support), based on a change of circumstances, was denied in the Supreme Court, Westchester County.
The plaintiff husband now seeks to convert the aforesaid separation judgment, in which he was the guilty party, into a divorce decree which will dissolve the marriage contract and terminate all the property and other rights vested in the defendant wife, present and future, stemming from the marriage. If the plaintiff is awarded a decree of divorce, defendant, who has been found by the courts, trial and appellate, to be innocent of fault, since she was awarded the judgment of separation, will have her marriage terminated, not only without her consent but obviously against her wishes and to her detriment, involving the loss to her of valuable property rights.
The defendant in this action instituted the separation action after her abandonment by her husband, plaintiff herein, in order for her to obtain support for herself and for the children of the marriage. It can also be safely assumed that when the defendant wife instituted her action for a separation, she did not contemplate that some two years later, under the revised Domestic Relations Law, her husband would be eligible to institute the present action for divorce, as he has.
The defendant wife in her prayer for relief requested, among other things, that a “ possessory lien” be impressed on the premises now owned by the parties as tenants by the entirety. *772 She alleges she is without sufficient means to obtain equivalent housing accommodations elsewhere for herself and the children of the marriage.
In addition, the court is asked to determine the adequacy of the provision for support and maintenance of the wife and children of the parties, as was provided for in the separation decree.
After trial, the court finds that the plaintiff “ has substantially performed all the terms and conditions of such decree or judgment (of separation) ” as required by subdivision (5) of section 170 of the Domestic Relations Law.
The court is constrained to grant the plaintiff husband a divorce under the circumstances herein presented. The auxilliary problem arises as to the power of the court to protect the innocent spouse from the undesirable results of the divorce as it affects her property rights and to preserve such property rights to her.
Defendant wife, before trial, amended her answer, alleging that subdivision (5) of section 170 is unconstitutional. The court finds no merit in this contention. I do not question the constitutionality of this subdivision, since the State, as sovereign, was empowered to enact the statute in such form as it presently exists. A strong presumption of constitutionality attaches to every statute.
Where a statute is susceptible of two constructions, one of which will make it constitutional and the other unconstitutional, the former must prevail. It is my conclusion that subdivision (5) of section 170 is constitutional even though it applies or may be applied retroactively in favor of a guilty party in a separation action. This question has been discussed at great length and passed upon in Frischman v. Frischman (58 Misc 2d 208), as well as in the more recently decided cases of Levin v. Levin (N. Y. L. J., Feb. 5, 1969, p. 18, col. 5), and Gleason v. Gleason (59 Misc 2d 96).
This court shares the views expressed in Frischman v. Frischman (supra, p. 211), wherein the court said, in dealing with the constitutionality of subdivision (5), that it had grave misgivings insofar as the statute makes ‘ ‘ this ground available to the ‘ guilty ’ spouse against whom a judgment of separation was granted prior to September 1, 1966 ”. The court continued and said (p. 211): “ I will think hard and long before granting a divorce to an unsuccessful spouse under the afore-mentioned circumstances, without safeguarding, in every way consonant with my powers, the ‘ innocent ’ party’s economic and inheritance rights as ‘ surviving spouse ’ ”.
*773 The questions of constitutionality of the revised divorce laws, especially .subdivision (5) of section 170 as well as its applicability to separation decrees granted prior to the effective date of the amended statute, have been dealt with completely and adequately in cases in this and neighboring jurisdictions, which are collated in Abelson v. Abelson (59 Misc 2d 172) and Zientara v. Zientara (59 Misc 2d 344), as well as in three articles entitled “ The Conversion Ground for Divorce in New York ” by Foster and Freed, appearing in the New York Law Journal on April 30, May 1 and May 2, 1969.
Since the question of retroactivity was not directly raised on the trial of this action, the court will not deal with the matter because its expressions would amount to dicta. Nor will such discussion contribute toward a constructive determination of the principal issues before the court. I am of the opinion that subdivision (5) of section 170 has retroactive effect and will so consider it in the disposition of this case.
In the many eases where the question of retroactivity of this statute has been raised and passed upon, the rights of an innocent spouse against whom a divorce judgment was sought have been disregarded and, except for taking notice of such inequity, have not been passed upon.
Prior to the enactment of the newly amended divorce law (L. 1966, ch. 254), misconduct of the most serious nature (adultery) had to be proven before a divorce would be granted dissolving a marriage. This court is of the opinion that the Legislature, in enacting section 170, by adding several “ non-fault" grounds as the basis for an action of divorce, never intended to deprive a wife of her valuable property rights, if she was not the ££ guilty ” party to a divorce action. These grounds added to the traditional ground of adultery, which from 1787, when the first divorce laws in this State were passed, defined adultery as the only ground for divorce, showed a recognition that certain ££ dead marriages ” ought not to continue to exist and should be dissolved. In fact, prior to the revision, the wife had an option to bring an action for separation and not divorce in order to protect her economic rights and remain "the wife ” in an otherwise “ dead marriage
In view of the legislative pronouncement made by the enactment of subdivision (5) of section 170 it now seems clear that the policy of this State is not to compel parties to continue a marital status which is ostensible rather than real. It would be both unrealistic and impracticable to insist that a dead marriage continue and that the parties remain husband and wife. However, it is nevertheless unclear that the Legislature intended *774 to permit the wrongdoer to free himself from the bonds of matrimony without securing to the innocent spouse some of the economic benefits which accrued during the matrimonial status.
Such property rights and economic benefits may be generally identified as title to real estate owned by the parties, as tenants by the entirety, which upon a divorce is converted to a tenancy in common; rights under the Estates, Powers and Trusts Law; property held jointly with right of survivorship, such as bank accounts, stockholdings, bonds, securities; Social Security benefits ; hospital and medical insurance benefits; union retirement funds, etc.
There were submitted to the Legislature this year several proposed amendments which would have added a new section (§ 178) to the Domestic Relations Law. The 1968 Legislature had similar proposals before it. The purpose of the proposed legislation was to protect and preserve the property rights of an innocent spouse against whom a judgment of divorce is sought, she having been the successful party to a prior separation action. It would be helpful to review the proposed legislation as contained in Senate Intro. 2847, which read: “ § 178. Judgment. In an action for divorce brought pursuant to subdivision five of section one hundred seventy of this chapter a judgment, in favor of the party against whom a judgment or decree of separation was entered, may provide that the party against whom such judgment of divorce is entered shall qualify under the estates, powers and trusts law as a surviving spouse and may make .such additional award as justice may require, having regard for the amount of alimony awarded, if any, the character and situation of the parties and all of the circumstances of the case, including, but not limited to, the length of the marriage, the financial resources of the respective parties, the ability of the wife to support herself and the provisions made for child support. Such award may be made in kind or to be paid in a lump sum or by periodic installments. ’ ’
This proposal would permit the decree of divorce to contain specific provisions protecting the economic and property rights of the innocent spouse against whom a “ non-fault ” divorce is granted.
This court waited hopefully for the 1969 Legislature to assume its responsibilities and adopt legislation to protect the economic and property rights of an innocent victim, party to a converted divorce action. However, the Legislature has now adjourned and the bill that would have corrected a situation calling for such action (Sen. Intro. 2847) has died in committee. Apathy *775 in this matter should not be tolerated and our courts should assume a responsibility and grant relief, if it be justified.
The failure of the Legislature to have added this new section protecting innocent spouses makes it incumbent on this court to provide that relief which is so urgently needed.
Whether corrective measures are ever adopted and become law is a matter of conjecture.
The court should not withhold its determination upon the hope that at some future time the Legislature will, in its wisdom, act to cure an inequity which it, itself, has created. Until such legislative action is forthcoming, the court must act to resolve those issues properly presented before it.
In the light of the many cases that have arisen following the ‘ ‘ two years living apart ’ ’ provision after the enactment of subdivision (5) of section 170 and the divergent opinions in the several jurisdictions, it is clear that the new divorce law raises new and complex problems that stem from a hastily and unpractically drawn bill which was a compromise measure, creating ambiguity and inequities that demand correction.
In the absence of a statutory provision or judicial precedent directly laying down our policy applicable to the circumstances of a particular case, we must look for guidance to the general spirit and purpose of our laws and the trend of our judicial decisions. In Greenberg v. Lorenz (9 N Y 2d 195) the then Chief Judge Desmond, writing for a unanimous court, declared an existing rule of law of long standing harsh and unfair (the requirement of privity of contract in products liability cases).
In that case, as here, although recommendations were before the Legislature (in 1943, in 1945 and in 1959) to amend an existing statute correcting an unfair and unjust situation, it failed to act on the proposals before it. The court, in modifying what was described as an unfair rule, which was unjust and prejudicial to injured parties, recognized that in making such change it was correcting an inequitable situation upon which the Legislature refused to act.
Consequently, presented herein is the novel question of the power of the court to protect the property rights of an innocent spouse who is unable to avail herself of any statutory protection because there is none. The courts have unanimously recognized that in appropriate cases they have inherent power to make orders that will correct evils, preserve rights and prevent injury to innocent parties.
Separability of the various rights which stem from the marital status has long been recognized (Estin v. Estin, 334 U. S. 541; *776 Sutton v. Leib, 342 U. S. 402; May v. Anderson, 345 U. S. 528; Hopson v. Hopson, 221 F. 2d 839; Meredith v. Meredith, 204 F. 2d 64; Vanderbilt v. Vanderbilt, 354 U. S. 416; Anello v. Anello, 22 A D 2d 694; Huber v. Huber, 26 Misc 2d 539; Di Russo v. Di Russo, 55 Misc 2d 839). £ £ The £ divisible divorce anomalous though it may first appear, has become a recognized concept; it is now familiar law that a divorce decree may be completely effective to dissolve a marriage and yet completely ineffectual to alter certain legal and economic incidents of that marriage.” (Lynn v. Lynn, 302 N. Y. 193, 201.)
The effect of a divorce upon the property rights of the respective parties to a marriage has been extensively examined by the courts in this jurisdiction where the court was required to determine the efficacy of a foreign divorce (Estin v. Estin, 296 N. Y. 308; Lynn v. Lynn, supra; Kreiger v. Kreiger, 297 N. Y. 530; Vanderbilt v. Vanderbilt, 1 N Y 2d 342; Anello v. Anello, supra; Burford v. Burford, 24 A D 2d 491; Huber v. Huber, supra; Kolb v. Kolb, 52 Misc 2d 313; Kraus v. Huelsman, 52 Misc 2d 807; Faye v. Faye, 139 N. Y. S. 2d 88).
In divorce proceedings the division of the estate which stems from the marital status is an adjustment of property rights and equities between the parties (27B C. J. S., Divorce, § 291 [1]).
In Estin v. Estin (334 U. S. 541, 545) the court said: £< But the fact that marital capacity was changed does not mean that every other legal incidence of the marriage was necessarily affected. ”
It is clear that the Supreme Court of the United States in the Estin case suggested that it would be feasible to treat with the divorce as a divisible decree which dissolved the marriage but left property rights unimpaired.
In England, matrimonial matters and all issues relating thereto were handled by the ecclesiastical courts. The jurisdiction of the Supreme Court which was inherited from England was the common-law and equity jurisdiction possessed and exercised at the time this country became an independent nation (Langerman v. Langerman, 303 N. Y. 465, 470). This jurisdiction is legislatively described in section 140-b of the Judiciary Law.
The courts of this State prior to 1787 had no jurisdiction over divorce actions, and the only remedy available to an aggrieved party was to- apply to the Colonial Governor and his Council or to the Legislature for relief (Erkenbrach v. Erkenbrach, 96 N. Y. 456, 459).
In that year the Court of Chancery was empowered by statute to entertain proceedings for a divorce. The only ground upon *777 which a party could predicate an action for divorce was for adultery. The ability to obtain a divorce in this State was limited to this sole wrongdoing and remained unchanged until 1966 when the Legislature liberalized the grounds for divorce (Domestic Relations Law, § 170).
Section 234 of the Domestic Relations Law provides that, ‘ ‘ In any action for divorce * * * the court may (1) determine any question as to the title to property arising between the parties ’ ’. This section was derived from section 1164-a of the Civil Practice Act, and broadens the court’s power well beyond the limited scope of that Civil Practice Act provision. Section 1164-a of the Civil Practice Act spoke only of the 11 occupancy ” of property while section 234 of the Domestic Relations Law expressly empowers the court to decide title questions in matrimonial actions. The Practice Commentary contained in McKinney’s Consolidated Laws of New York (Book 14, p. 124) indicates that the legal criteria by which title questions to real property are to be decided between husband and wife are not changed by section 234.
The Court of Appeals established in Stelz v. Shreck (128 N. Y. 263) that where land is conveyed to a husband and wife, without any express language to the contrary, they take as tenants by the entirety. “ At common law husband and wife were regarded as one person, and a conveyance to them by name was a conveyance in law to but one person.” (p. 266). Consequently, such tenancy is founded on the marital relation and when that unity is broken by divorce the tenancy is ended and each party takes his or her proportionate share of the property as a tenant in common without survivorship. The Court of Appeals in the Stels case recognized the contrary view reached by the courts of Michigan, expressed in Matter of Appeal of Lewis (85 Mich. 340) but felt that their conclusion was “ more in accord with legal principles ”.
Recently, the Appellate Division, Second Department, in describing the value of a tenancy in the entirety, said: “ On the death of one tenant by the entirety, the other becomes the sole owner of the property through the original grant ” (Knight v. Knight, 31 A D 2d 267, 268).
The determination of the rights of the respective spouses to real property is but one of the legal incidences of the marriage relationship to be resolved. Consideration must also be given as to the effect of this divorce upon the inheritance rights of the innocent spouses. Under section 5-1.2 of the Estates, Powers and Trusts Law, the innocent party here would be disqualified as a surviving spouse.
*778 In Riggs v. Palmer (115 N. Y. 506, 510) the court, in an excellent dissertation dealing with ‘1 common decency and common morals ” as related to the descent of property, said: “ 1 In order to form a right judgment whether a. case be within the equity of a statute, it is a good way to suppose the law-maker present, and that you have asked him this question, did you intend to comprehend this case?’ ”
Consequently, while the court is constrained to grant the divorce to the plaintiff husband it will nevertheless provide protection to the innocent spouse with respect to her property rights which stemmed from the marriage.
The question of the ‘ ‘ clean hands ’ ’ doctrine as it may be applied to this case need not be discussed at length except to observe that the statute (Domestic Relations Law, § 170, subd. [5]) grants the guilty party to a separation agreement the right, as plaintiff, to seek a divorce judgment. In these circumstances, the court may not close its doors to him. Matrimonial matters such as the one before the court are now on the equity side of the court. However, since this court is of the opinion that, in addition, relief ought to be available to the innocent party to the divorce action who is without fault, this court, sitting as a court of equity, will consider the rights and amenities of an innocent spouse against whom a “non-fault” divorce may be secured. To this extent, the “ clean hands” doctrine applies.
In a determination of this case I have resolved to exercise the broad powers of a court of equity. However, reason exists to treat the matter before me as one for a divisible divorce which dissolves the marriage that leaves the property rights of the innocent spouse, though a defendant in such action, unimpaired i (Estin v. Estin, 334 U. S. 541, 549).
Foster and Freed, in their comprehensive articles on converted divorces, already cited hereinbefore, after discussing the questions raised in this opinion as well as in all other opinions dealing with cases under this subdivision of section 170, state in their article of May 2,1969: “ If there are economic inequities or injustices when section 170 (5) is imposed retroactively in favor of a ‘ guilty ’ husband, the most appropriate solution is to award adequate alimony and to make sure that there is an equitable distribution of property and assets accumulated during the marriage. * * *
“ In that regard, it might be possible to amend section 170 (5) so that the Supreme Court is given discretion to award a wife an added share of property or alimony when her husband obtains a divorce under section 170 (5) or an ex parte divorce in New *779 York or elsewhere. It is in the public interest that some, if not all, dead marriages be legally terminated, but it also should be our public policy that a wife should receive her fair share of what was accumulated during their partnership.”
It is interesting to note the observations of the authors in recognizing the need for adjusting the wrong that this mischievous, hastily drawn amendment has created and suggesting that the Supreme Court make every effort to correct the inequality imposed upon an innocent wife.
The husband, plaintiff here, complied with the separation decree and has made generous additional payments with regularity to his wife for her support and for the support, maintenance and education of his sons. Without contradiction, it was shown that the plaintiff herein made payments for the following purposes: refinishing floors of the house owned by the parties as tenants by the entirety, camp for the children, synagogue membership dues, school bus transportation, children’s clothes, the gardener, repairs to the house. These payments, in addition to those required to be made pursuant to the judgment of separation, together with additional payments of cash, amounted to more than $5,000 a year for the past three years. Under these circumstances and because the court feels that the facts justify such action, it will increase the provision for maintenance for the wife and for support for the children by the sum of $25 a week, and therefore, the husband will be obliged to pay to the defendant wife the sum of $150 a week as alimony and for support and maintenance of the children of the marriage.
The court is of the opinion that in the light of the voluntary payments by the plaintiff toward the support of his household as indicated upon the trial, the award provided for in the separation judgment should be increased. Authority is not wanting for such disposition (Turecamo v. Turecamo, 25 A D 2d 420).
Since findings of fact and conclusions of law have been waived, this opinion constitutes the judgment of the court, which shall provide that plaintiff is entitled to a judgment of divorce, that he shall be required to perform all the terms and conditions of the judgment of separation filed in the Supreme Court, Westchester County, on February 11, 1966, and submit judgment on notice with provision for alimony and maintenance as indicated herein in the sum of $150 a week, to be paid by plaintiff to the defendant, effective February 17, 1969, and counsel fees to be payable to the attorney for the defendant wife in the sum of $2,500, with the understanding that $1,500 of such sum shall be *780 repaid to the defendant wife, since this is the sum she advanced to her lawyer to defend her in this action. In addition, provision shall be made in such judgment to preserve the property rights of the defendant and such other benefits as flow to her as a wife. Such rights shall not be extinguished by reason of the judgment of divorce.