OPINION OF THE COURT
Lyman H. Smith, J.
Petitioner, a practicing attorney, moves this Extraordinary and Special Term of Supreme Court to vacate its ex parte order of January 11, 1979 which provided, inter alia, that Deputy Sheriffs assigned to guard the working sessions of *625 three Onondaga County Extraordinary Grand Juries,[1] together with members of the Onondaga County Special Prosecutor’s staff, "take all reasonable and necessary steps to provide adequate security for the Grand Juries so that the confidentiality and secrecy of those bodies, as provided by law, shall not be impaired.”[2]
Petitioner contends that the above-identified order exceeded the statutory powers of the court and interfered with petitioner’s rights as a practicing attorney.
The question is: Did the court, in issuing its order of January 11, 1979, exceed its authority?
FACTUAL BACKGROUND
While the issue, thus stated, presents a prima facie question of law, its true dimension and its ultimate resolution must be viewed in the light of the undisputed factual background which has, apparently, prompted petitioner’s application.
There are presently three separate and distinct Extraordinary Grand Juries[3] meeting in Onondaga County. Each of these Grand Juries meets on various days of each week in the New York State Armory located at No. 236 West Jefferson Street in the City of Syracuse, New York. The Armory is a public facility maintained by National Guard personnel. Access to the building is monitored. A custodial guard is stationed at the main entrance on Jefferson Circle (so-called) to permit and log the entry of those having legitimate business *626 in the building. On the days when a Grand Jury is in session a Deputy Sheriff is similarly assigned to screen and permit entry of all those summoned to appear, or who may have legitimate reason to consult with one of the Grand Juries or with members of the Special Prosecutor’s staff.
The Armory was selected as a meeting place for the Extraordinary Grand Juries for several cogent reasons, not the least of which was the logistical problem of lack of adequate space in the Onondaga County Courthouse. Moreover, the frequency of the Grand Jury sessions, the large number of witnesses called, and the resultant volume of foot traffic, dictated the choice of the State Armory as an appropriate facility and meeting place for these Grand Juries, especially on a continuing basis without interfering with other judicial proceedings. Additionally, the sensitivity to the community at large of the matters now under investigation, pertaining as they do to possible corruption in local government, mandated that the Grand Juries be able to meet and conduct their business in a safe and secure setting.
The Grand Jury room itself is located on the second floor of the Armory. Access to the second floor is gained by use of two open stairways at either end of a long open corridor on the first floor.
Because of the number of witnesses appearing before the Grand Juries, it has often been necessary to schedule more than one witness to appear at any given time. To promote efficiency and to minimize the opportunity for inadvertent disclosure of a witness’ identity to other witnesses, or to counsel present in the building, the Special Prosecutor’s staff has designated several rooms on the first and second floors of the Armory in which prospective witnesses and their counsel have been invited to wait, pending their appearance in the Grand Jury room. At times it has been necessary to ask that doors to these waiting rooms be momentarily closed while witnesses and their counsel pass through the halls. The inconvenience to witnesses and counsel attributable to these waiting periods is minimal and differs little from that generally associated with scheduling the appearance of witnesses in any judicial proceeding.
The court’s order of January 11 is supplemental to a previous order, issued November 15, 1977, which prohibits any grand juror, member of the Special Prosecutor’s office, or *627 court personnel assisting in the administration of the Extraordinary Grand Jury proceedings from revealing the nature or substance of such proceedings, including the identification of witnesses appearing before these Grand Juries. (See CPL 190.25, subd 4.)
The January 11, 1979 order provides that persons present in the Armory on Grand Jury business may be assigned to the afore-mentioned waiting areas and rooms located on the first and second floors of the Armory pending completion of their appearance in the Grand Jury room on the second floor. The order also grants to members of the Special Prosecutor’s staff the authority to remove from the Armory any person who, in the judgment of a staff member, interferes with the lawful functions of the Grand Jury, threatens its security or obstructs procedures established to prevent the identification of Grand Jury witnesses.
As above indicated, petitioner challenges the January 11 order authorizing the Special Prosecutor’s office to assign persons waiting to testify before the Grand Jury, and their counsel, to designated areas within the Armory.[4] Petitioner contends that such directives by the Special Prosecutor’s office, or deputies assigned thereto, interferes with his right to move freely in and about a courthouse,[5] and urges that the Special Prosecutor’s staff has no right to restrict his movement therein. Significantly, petitioner makes no claim that his client’s right to counsel (US Const, 6th Arndt) has been impeded by the Special Prosecutor’s actions, nor, for that matter, by the court’s order of January 11, 1979.
Petitioner also claims that the January 11 order was issued upon mere speculation of the Special Prosecutor that the Grand Jury might suffer disruptions, without a factual showing of the necessity for such judicial process. Finally, he urges that the order vests vague, excessive and extralegal discretion in permitting the Special Prosecutor’s staff to arbitrarily determine what conduct may constitute sufficient justification to remove persons from the building.
*628 CONCLUSIONS OF LAW
This court conceives that it has the highest duty and responsibility to maintain the integrity and secrecy of the Extraordinary and Special Grand Jury proceedings, including the identity of witnesses appearing before the Grand Jury. The authority to prescribe reasonable measures that serve to meet this responsibility springs not from any specific statutory provision but, rather, from the inherent power possessed by all courts to supervise their own proceedings. (See Langan v First Trust & Deposit Co., 270 App Div 700, affd 296 NY 1014; Clark v Garth, 67 Misc 2d 473.) Such inherent power of supervision includes the issuance of orders which are necessary and reasonable. (See Hendel v Hendel, 59 Misc 2d 770, mod 44 AD2d 532; People v Jelke, 308 NY 56; People v Miller, 257 NY 54; see, also, Judiciary Law, § 2-b, subd 3.)
CPL 190.25 (subd 4) prohibits persons associated with Grand Juries from revealing the nature and substance of Grand Jury proceedings. This provision reflects not only long-standing and time-honored traditions of secrecy and confidentiality that cloak all Grand Jury proceedings, but also recognizes that secrecy is absolutely necessary for the Grand Jury to properly function. (See People ex rel. Hirschberg v Supreme Ct., 269 NY 392.)
The protection of the identity of those persons who appear as witnesses before Grand Juries is the cornerstone of the Grand Jury’s vitality. (See People v Di Napoli, 27 NY2d 229.) Disclosure of the identities of Grand Jury witnesses could easily have a devastating effect upon the willingness of witnesses to appear upon the trial to follow. So, too, any revelation to the effect that the names of witnesses appearing before the Grand Jury will not be held confidential, would, perforce, have a deleterious effect upon future Grand Jury investigations, especially where, as here, three Grand Juries have been (for a long period) continuously engaged in investigations of matters that are sensitive and important to the community at large. (See People v Doe, 47 Misc 2d 975, affd 24 AD2d 843; see, also, Matter of Temporary State Comm, of Investigation, 47 Misc 2d 11; People v Banks, 27 Misc 2d 557.)
The January 11 order was not issued in a vacuum, nor was it the result of mere speculative anxieties on the part of the Special Prosecutor that disruptions in the Grand Jury proceedings might occur. Rather, the order resulted from several conferences with the Special Prosecutor and members of his *629 staff in which various occurrences, disruptive of the Grand Jury sessions and related to the control of foot traffic in the environs of the Grand Jury rooms, were discussed. Suffice it to say, the order of January 11 was a broad-based response to a need for behavioral guidelines within the environs of the Grand Jury, triggered by events which had threatened the peace and security of the Grand Jury proceedings.
Metaphysical assumptions that the powers delegated to court officers (to regulate foot traffic in the hallways) might be abused, in futuro, will not suffice to render the court powerless to establish rules that will assure the safety and tranquility of the Grand Jury sessions and preserve the anonymity of witnesses.[6] In any event, the order of the court does not prevent petitioner’s right, or any other attorney’s right, to assemble and consult with his client, since he may do so in designated waiting rooms. (See US Const, 1st Amdt; see, also, Greer v Spock, 424 US 828.) Likewise, the order does not infringe on the Sixth Amendment rights of petitioner’s client; nor, has any showing been made that such rights were violated in any way. Should excesses, abuses or infringements of individual rights occur in the exercise of the authority contemplated by the court’s order, abundant procedures exist to remedy them. To suggest that the peace, safety and security of the Grand Jury must first be threatened, or that an untoward breach thereof must first occur, before the court may promulgate the subject order, does little more than advance the classic non sequitur of locking the barn door after the horse has been stolen.
In ñne, the order requires no more than the exercise of reasonable decorum and civility among reasonable men.
The application to vacate the court’s order of January 11, 1979 is in all respects denied.

. See Executive Orders Nos. 42 and 43, dated November 24, 1976; 9 NYCRR 3.42, 3.43.

. The court order further provided, "[T]hat said Deputy Sheriffs and members of the staff of the Special Prosecutor’s Office may require any and all persons present in the Armory during sessions of the Grand Juries to remain in any area or room designated by said Deputy Sheriffs or members of the staff of the Special Prosecutor’s Office as waiting areas or rooms; it is further ordered, that said Deputy Sheriffs and members of the staff of the Special Prosecutor’s Office may require any person to leave the Armory, if, in the judgment of the members of the staff of the Special Prosecutor’s Office such person is interfering with the lawful functioning of the Grand Jury, threatening the security of its operation, or obstructing procedures designed to prevent identification of witnesses. * * * this order shall not apply to any person present in the Armory for purposes other than those associated with the Grand Juries.”

. These Grand Juries are identified in the chronological order in which they were empanelled and are further identified by reference to the month and year in which each jury was sworn, as follows: the First Grand Jury (The January 1977 Grand Jury); the Second Grand Jury (The September 1977 Grand Jury); the Third Grand Jury (The July 1978 Grand Jury).

. It is undisputed that petitioner appeared with and as counsel for a client subpoenaed as a witness before the September 1977 Grand Jury on January 4, and January 9, 1979.

. The Special Prosecutor agrees with petitioner that the Armory constitutes a courthouse while a Grand Jury is meeting therein, but a courthouse limited solely to conducting these Grand Jury proceedings and nothing more.

. Cf. Administrative Rules, Appellate Division, First and Second Departments, prohibiting interference with ingress and egress of witnesses to and from courtrooms (22 NYCRR 605.2, 679.2).